*846 Justice Thomas
delivered the opinion of the Court.
California law provides that every prisoner eligible for release on state parole “shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.” Cal. Penal Code Ann. § 3067(a) (West 2000). We granted certiorari to decide whether a suspicionless search, conducted under the authority of this statute, violates the Constitution. We hold that it does not.
I
In September 2002, petitioner Donald Curtis Samson was on state parole in California, following a conviction for being a felon in possession of a firearm. On September 6, 2002, Officer Alex Rohleder of the San Bruno Police Department observed petitioner walking down a street with a woman and a child. Based on a prior contact with petitioner, Officer Rohleder was aware that petitioner was on parole and believed that he was facing an at-large warrant. Accordingly, Officer Rohleder stopped petitioner and asked him whether he had an outstanding parole warrant. Petitioner responded that there was no outstanding warrant and that he “was in good standing with his parole agent.” Brief for Petitioner 4. Officer Rohleder confirmed, by radio dispatch, that petitioner was on parole and that he did not have an outstanding warrant. Nevertheless, pursuant to Cal. Penal Code Ann. § 3067(a) (West 2000) and based solely on petition *847 er’s status as a parolee, Officer Rohleder searched petitioner. During the search, Officer Rohleder found a cigarette box in petitioner’s left breast pocket. Inside the box he found a plastic baggie containing methamphetamine.
The State charged petitioner with possession of methamphetamine pursuant to Cal. Health & Safety Code Ann. § 11377(a) (West 1991). The trial court denied petitioner’s motion to suppress the methamphetamine evidence, finding that Cal. Penal Code Ann. § 3067(a) (West 2000) authorized the search and that the search was not “arbitrary or capricious.” App. 62-63 (Proceedings on Motion to Supress). A jury convicted petitioner of the possession charge, and the trial court sentenced him to seven years’ imprisonment.
The California Court of Appeal affirmed. Relying on People v. Reyes, 19 Cal. 4th 743, 968 P. 2d 445 (1998), the court held that suspicionless searches of parolees are lawful under California law; that “ ‘[s]uch a search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing’”; and that the search in this case was not arbitrary, capricious, or harassing. No. A102394 (Ct. App. Cal., 1st App. Dist., Oct. 14, 2004), App. 12-14.
We granted certiorari, 545 U. S. 1165 (2005), to answer a variation of the question this Court left open in United States v. Knights, 534 U. S. 112, 120, n. 6 (2001) — whether a condition of release can so diminish or eliminate a released prisoner’s reasonable expectation of privacy that a suspicion-less search by a law enforcement officer would not offend the Fourth Amendment.[1] Answering that question in the affirmative today, we affirm the judgment of the California Court of Appeal.
*848 II
“[Ujnder our general Fourth Amendment approach” we “examin[e] the totality of the circumstances” to determine whether a search is reasonable within the meaning of the Fourth Amendment. Id., at 118 (internal quotation marks omitted). Whether a search is reasonable “is determined by assessing, on the one hand, the degree to which it intrudes upon an individual’s privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.” Id., at 118-119 (internal quotation marks omitted).
We recently applied this approach in United States v. Knights. In that case, California law required Knights, as a probationer, to “ ‘[sjubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.’” Id., at 114 (brackets in original). Several days after Knights had been placed on probation, police suspected that he had been involved in several incidents of arson and vandalism. Based upon that suspicion and pursuant to the search condition of his probation, a police officer conducted a warrantless search of Knights’ apartment and found arson and drug paraphernalia. Id., at 115-116.
We concluded that the search of Knights’ apartment was reasonable. In evaluating the degree of intrusion into Knights’ privacy, we found Knights’ probationary status “salient,” id., at 118, observing that “[probation is ‘one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service,’” id., at 119 (quoting Griffin v. Wisconsin, 483 U. S. 868, 874 (1987)). Cf. Hudson v. Palmer, 468 U. S. 517, 530 (1984) (holding that prisoners have no reasonable expectation of privacy). We further observed that, by virtue of their status alone, probationers “ ‘do not enjoy “the absolute liberty to which every *849 citizen is entitled,” ’ ” Knights, supra, at 119 (quoting Griffin, supra, at 874, in turn quoting Morrissey v. Brewer, 408 U. S. 471, 480 (1972)), justifying the “impos[ition] [of] reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens,” Knights, supra, at 119. We also considered the facts that Knights’ probation order clearly set out the probation search condition, and that Knights was clearly informed of the condition. See 534 U. S., at 119. We concluded that under these circumstances, Knights’ expectation of privacy was significantly diminished. See id., at 119-120.
We also concluded that probation searches, such as the search of Knights’ apartment, are necessary to the promotion of legitimate governmental interests. Noting the State’s dual interest in integrating probationers back into the community and combating recidivism, see id., at 120-121, we credited the “ ‘assumption’ ” that, by virtue of his status, a probationer “ ‘is more likely than the ordinary citizen to violate the law,’” id., at 120 (quoting Griffin, supra, at 880). We further found that “probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply.” Knights, 534 U. S., at 120. We explained that the State did not have to ignore the reality of recidivism or suppress its interests in “protecting potential victims of criminal enterprise” for fear of running afoul of the Fourth Amendment. Id., at 121.
Balancing these interests, we held that “[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer’s significantly diminished pri *850 vacy interests is reasonable.” Ibid. Because the search at issue in Knights was predicated on both the probation search condition and reasonable suspicion, we did not reach the question whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation. Id., at 120, n. 6. Our attention is directed to that question today, albeit in the context of a parolee search.
Ill
As we noted in Knights, parolees are on the “continuum” of state-imposed punishments. Id., at 119 (internal quotation marks omitted). On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, “parole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.” Morrissey, supra, at 477. “In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.” Pennsylvania Bd. of Probation and Parole v. Scott, 524 U. S. 357, 365 (1998). See also United States v. Reyes, 283 F. 3d 446, 461 (CA2 2002) (“[FJederal supervised release,... in contrast to probation, is meted out in addition to, not in lieu of, incarceration” (internal quotation marks omitted)); United States v. Cardona, 903 F. 2d 60, 63 (CA1 1990) (“[0]n the Court’s continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen’s absolute liberty than do probationers” (citations and internal quotation marks omitted)).[2]
*851 California’s system of parole is consistent with these observations: A California inmate may serve his parole period either in physical custody, or elect to complete his sentence out of physical custody and subject to certain conditions. Cal. Penal Code Ann. § 3060.5 (West 2000). Under the latter option, an inmate-turned-parolee remains in the legal custody of the California Department of Corrections through the remainder of his term, § 3056, and must comply with all of the terms and conditions of parole, including mandatory drug tests, restrictions on association with felons or gang members, and mandatory meetings with parole officers, Cal. Code Regs., tit. 15, § 2512 (2005); Cal. Penal Code Ann. § 3067 (West 2000). See also Morrissey, supra, at 478 (discussing other permissible terms and conditions of parole). General conditions of parole also require a parolee to report to his assigned parole officer immediately upon release, inform the parole officer within 72 hours of any change in employment status, request permission to travel a distance of more than 50 miles from the parolee’s home, and refrain from criminal conduct and possession of firearms, specified weapons, or knives unrelated to employment. Cal. Code Regs., tit. 15, *852 §2512. Parolees may also be subject to special conditions, including psychiatric treatment programs, mandatory abstinence from alcohol, residence approval, and “[a]ny other condition deemed necessary by the Board [of Parole Hearings] or the Department [of Corrections and Rehabilitation] due to unusual circumstances.” §2513. The extent and reach of these conditions clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone.
Additionally, as we found “salient” in Knights with respect to the probation search condition, the parole search condition under California law — requiring inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer “at any time,” Cal. Penal Code Ann. § 3067(a) (West 2000) — was “clearly expressed” to petitioner. Knights, 534 U. S., at 119. He signed an order submitting to the condition and thus was “unambiguously” aware of it. Ibid. In Knights, we found that acceptance of a clear and unambiguous search condition “significantly diminished Knights’ reasonable expectation of privacy.” Id., at 120. Examining the totality of the circumstances pertaining to petitioner’s status as a parolee, “an established variation on imprisonment,” Morrissey, 408 U. S., at 477, including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate.[3]
*853 The State’s interests, by contrast, are substantial. This Court has repeatedly acknowledged that a State has an “‘overwhelming interest’” in supervising parolees because “parolees. . . are more likely to commit future criminal offenses.” Pennsylvania Bd. of Probation and Parole, 524 U. S., at 365 (explaining that the interest in combating recidivism “is the very premise behind the system of close parole supervision”). Similarly, this Court has repeatedly acknowledged that a State’s interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth. Amendment. See Griffin, 483 U. S., at 879; Knights, supra, at 121.
The empirical evidence presented in this case clearly demonstrates the significance of these interests to the State of California. As of November 30, 2005, California had over 130,000 released parolees. California’s parolee population has a 68- to 70-percent recidivism rate. See California Attorney General, Crime in California 37 (Apr. 2001) (explaining that 68 percent of adult parolees are returned to prison, 55 percent for a parole violation, 13 percent for the commission of a new felony offense); J. Petersilia, Challenges of Prisoner Reentry and Parole in California, 12 California Policy Research Center Brief, p. 2 (June 2000), available at http:// *854 www.ucop.edu/cprc/parole.pdf (as visited June 15, 2006, and available in Clerk of Court’s case file) (“70% of the state’s paroled felons reoffend within 18 months — the highest recidivism rate in the nation”). This Court has acknowledged the grave safety concerns that attend recidivism. See Ewing v. California, 538 U. S. 11, 26 (2003) (plurality opinion) (“Recidivism is a serious public safety concern in California and throughout the Nation”).
As we made clear in Knights, the Fourth Amendment does not render the States powerless to address these concerns effectively. See 534 U. S., at 121. Contrary to petitioner’s contention, California’s ability to conduct suspicion-less searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society.
In California, an eligible inmate serving a determinate sentence may elect parole when the actual days he has served plus statutory time credits equal the term imposed by the trial court, Cal. Penal Code Ann. §§ 2931,2933, 3000(b)(1) (West 2000), irrespective of whether the inmate is capable of integrating himself back into productive society. As the recidivism rate demonstrates, most parolees are ill prepared to handle the pressures of reintegration. Thus, most parolees require intense supervision. The California Legislature has concluded that, given the number of inmates the State paroles and its high recidivism rate, a requirement that searches be based on individualized suspicion would undermine the State’s ability to effectively supervise parolees and protect the public from criminal acts by reoffenders. This conclusion makes eminent sense. Imposing a reasonable suspicion requirement, as urged by petitioner, would give parolees greater opportunity to anticipate searches and conceal criminality. See Knights, supra, at 120; Griffin, 483 U. S., at 879. This Court concluded that the incentive-to-conceal concern justified an “intensive” system for supervising probationers in Griffin, id., at 875. That concern applies *855 with even greater force to a system of supervising parolees. See United States v. Reyes, 283 F. 3d, at 461 (observing that the Griffin rationale “applies] a fortiori” to “federal supervised release, which, in contrast to probation, is ‘meted out in addition to, not in lieu of, incarceration’ ”); United States v. Crawford, 372 F. 3d 1048, 1077 (CA9 2004) (Kleinfeld, J., concurring) (explaining that parolees, in contrast to probationers, “have been sentenced to prison for felonies and released before the end of their prison terms” and are “deemed to have acted more harmfully than anyone except those felons not released on parole”); Hudson, 468 U. S., at 529 (observing that it would be “naive” to institute a system of “ ‘planned random searches’ ” as that would allow prisoners to “anticipate” searches, thus defeating the purpose of random searches).
Petitioner observes that the majority of States and the Federal Government have been able to further similar interests in reducing recidivism and promoting reintegration, despite having systems that permit parolee searches based upon some level of suspicion. Thus, petitioner contends, California’s system is constitutionally defective by comparison. Petitioner’s reliance on the practices of jurisdictions other than California, however, is misplaced. That some States and the Federal Government require a level of individualized suspicion is of little relevance to our determination whether California’s supervisory system is drawn to meet its needs and is reasonable, taking into account a parolee’s substantially diminished expectation of privacy.[4]
*856 Nor is there merit to the argument that California’s parole search law permits “a blanket grant of discretion untethered by any procedural safeguards,” post, at 857 (Stevens, J., dissenting). The concern that California’s suspicionless search system gives officers unbridled discretion to conduct searches, thereby inflicting dignitary harms that arouse strong resentment in parolees and undermine their ability to reintegrate into productive society, is belied by California’s prohibition on “arbitrary, capricious or harassing” searches. See Reyes, 19 Cal. 4th, at 752, 753-754, 968 P. 2d, at 450, 451; People v. Bravo, 43 Cal. 3d 600, 610, 738 P. 2d 336, 342 (1987) (probation); see also Cal. Penal Code Ann. § 3067(d) (West 2000) (“It is not the intent of the Legislature to authorize law enforcement officers to conduct searches for the sole purpose of harassment”).[5] The dissent’s claim that parolees under California law are subject to capricious searches conducted at the unchecked “whim” of law enforcement officers, post, at 858-859, 860, ignores this prohibition. Likewise, petitioner’s concern that California’s suspicionless search law frustrates reintegration efforts by permitting intrusions into *857 the privacy interests of third parties is also unavailing because that concern would arise under a suspicion-based regime as well.
IV
Thus, we conclude that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. Accordingly, we affirm the judgment of the California Court of Appeal.

It is so ordered.

 Knights, 534 U. S., at 120, n. 6 (“We do not decide whether the probation condition so diminished, or completely eliminated, Knights’ reasonable expectation of privacy . . . that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment”).

 Contrary to the dissent’s contention, nothing in our recognition that parolees are more akin to prisoners than probationers is inconsistent with our precedents. Nor, as the dissent suggests, do we equate parolees with prisoners for the purpose of concluding that parolees, like prisoners, have *851 rio Fourth Amendment rights. See post, at 861 (opinion of Stevens, J.). That view misperceives our holding. If that were the basis of our holding, then this case would have been resolved solely under Hudson v. Palmer, 468 U. S. 517 (1984), and there would have been no cause to resort to Fourth Amendment analysis. See ibid, (holding traditional Fourth Amendment analysis of the totality of the circumstances inapplicable to the question whether a prisoner had a reasonable expectation of privacy in his prison cell). Nor is our rationale inconsistent with Morrissey v. Brewer, 408 U. S. 471, 482 (1972). In that case, the Court recognized that restrictions on a parolee’s liberty are not unqualified. That statement, even if accepted as a truism, sheds no light on the extent to which a parolee’s constitutional rights are indeed limited — and no one argues that a parolee’s constitutional rights are not limited. Morrissey itself does not cast doubt on today’s holding given that the liberty at issue in that ease— the Fourteenth Amendment Due Process right to a hearing before revocation of parole — invokes wholly different analysis than the search at issue here.

 Because we find that the search at issue here is reasonable under our general Fourth Amendment approach, we need not reach the issue whether “acceptance of the search condition constituted consent in the Schneckloth [v. Bustamonte, 412 U. S. 218 (1973),] sense of a complete waiver of his Fourth Amendment rights.” United States v. Knights, 534 U. S. 112, 118 (2001). The California Supreme Court has not yet construed Cal. Penal Code Ann. §3067 (West 2000), the statute which governs parole for crimes committed after 1996, and which imposes the consent requirement. The California Court of Appeal has, and it has concluded that, under § 3067(b), “inmates who are otherwise eligible for parole yet refuse to agree to the mandatory search condition will remain imprisoned *853 ... until either (1) the inmate agrees to the search condition and is otherwise eligible for parole, or (2) has lost all worktime credits and is eligible for release after having served the balance of his/her sentence.” People v. Middleton, 131 Cal. App. 4th 732, 739-740, 31 Cal. Rptr. 3d 813, 818 (2005). Nonetheless, we decline to rest our holding today on the consent rationale. The California Supreme Court, we note, has not yet had a chance to address the question squarely, and it is far from clear that the State properly raised its consent theory in the courts below.
Nor do we address whether California’s parole search condition is justified as a special need under Griffin v. Wisconsin, 483 U. S. 868 (1987), because our holding under general Fourth Amendment principles renders such an examination unnecessary.

 The dissent argues that, “once one acknowledges that parolees do have legitimate expectations of privacy beyond those of prisoners, our Fourth Amendment jurisprudence does not permit the conclusion, reached by the Court here for the first time, that a search supported by neither individualized suspicion nor ‘special needs’ is nonetheless ‘reasonable.’” Post, at 858. That simply is not the case. The touchstone of the Fourth Amendment is reasonableness, not individualized suspicion. Thus, while this Court’s jurisprudence has often recognized that “to accommodate public and private interests some quantum of individualized suspicion is *856 usually a prerequisite to a constitutional search or seizure,” United States v. Martinez-Fuerte, 428 U. S. 543, 560 (1976), we have also recognized that the “Fourth Amendment imposes no irreducible requirement of such suspicion,” id., at 561. Therefore, although this Court has only sanctioned suspieionless searches in limited circumstances, namely, programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be “reasonable” under the Fourth Amendment. In light of California’s earnest concerns respecting recidivism, public safety, and reintegration of parolees into productive society, and because the object of the Fourth Amendment is reasonableness, our decision today is far from remarkable. Nor, given our prior precedents and caveats, is it “unprecedented.” Post, at 857.

 Under California precedent, we note, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee. See People v. Sanders, 31 Cal. 4th 318, 331-332, 73 P. 3d 496, 505-506 (2003); Brief for United States as Amicus Curiae 20.