2007 OK CR 30

**David Scott ANDREWS, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2006–626.

Court of Criminal Appeals of Oklahoma.

July 31, 2007.

Steve Nash, Attorney at Law, Oklahoma City, OK, Attorney for Defendant.

David Jacobsma, Assistant District Attorney, Beckham County D.A.'s Office, Sayre, Oklahoma, Attorney for State.

Steve Nash, Attorney at Law, Oklahoma City, OK, Attorney for Appellant.

W.A. Drew Edmondson, Attorney General of Oklahoma, Stephanie D. Jackson, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee.

### OPINION

CHAPEL, Judge.

¶1 David Scott Andrews was charged in Beckham County, in District Court Case No. CF–2003–272, with a single count of Possession of Firearms After Conviction or During Probation, under 21 O.S.Supp.2002, § 1283. Andrews was also charged, at the same time, in District Court Case No. CF–2003–273, with Count I, Unlawful Possession of Controlled Drug with Intent to Distribute, under 63 O.S.Supp.2003, § 2–401(B)(2); and Count II, Unlawful Possession of Drug Paraphernalia, under 63 O.S.2001, § 2–405. The two cases were jointly prosecuted and tried. Andrews was tried in a non-jury trial, by the Honorable Charles L. Goodwin, and convicted of all three counts. Andrews was sentenced by the Honorable Charles L. Goodwin to imprisonment for ten (10) years in CF–2003–272; and in CF–2003–273, to imprisonment for ten (10) years on Count I and imprisonment for one (1) year in the county jail on Count II. The sentences on all three counts were ordered to be served concurrent-

ly. Andrews appeals his convictions by challenging the validity of the search warrant issued to search his home.[1]

¶ 2 Throughout the proceedings in the two cases at issue, Andrews has challenged (and has challenged only) the validity of the warrant to search his home, which was issued based upon an anonymous tip.[2] The no-knock search warrant at issue was signed by the Honorable Douglas Haught at 3:17 p.m., on October 7, 2003. The affidavit underlying this search warrant was prepared and signed by Lary Damron on this same date.[3] The affidavit states that on October 7, 2003, Detective Kenny Shirey, of the Elk City Police Department, and Investigator R.C. Daniel, of the District II Drug Task Force, both received a telephone call from an anonymous male person about drug dealing and the possession of a firearm at a particular residence in Elk City, Oklahoma, namely 321 Sondra Drive. The caller was concerned that children were present in the home and were potentially at risk. The caller refused to provide his identity, expressing fear that he would be killed.[4]

¶ 3 According to the affidavit, the anonymous caller stated that Dave Andrews was living at this address with his fourteen-year-old son, a woman named Theresa Cupp, and a very young child, believed to be Cupp's grandchild. The caller stated that Andrews was doing light construction work on the home and that three vehicles were kept there, including a small S-10 type pick-up. The caller stated that Andrews had been arrested in the mid 1990's for having drugs and firearms, that he had received a twenty-year prison sentence, and that he was currently on probation. The caller further stated that he had been an acquaintance of Andrews for several years and that he was in his home during the late evening of the previous night, October 6, 2003. The caller stated that while in the home, he saw a plastic bag, approximately 8 × 12 inches in size, containing a brick of a green leafy substance that the caller believed to be marijuana. The caller also observed a chrome-type pistol, believed to be .40 or .45 caliber, which he had seen Andrews carry on several previous occasions. The caller stated that he observed what appeared to be a drug transaction between Andrews and a Hispanic man from Oklahoma City. The caller stated that the Hispanic man brought some unknown item(s) to the home and left with a duffle bag.

¶ 4 Damron's affidavit also summarizes the investigation that had been undertaken to confirm the reliability of the anonymous caller's information, noting the following facts. David Scott Andrews is the son of Robert L. Andrews, who was listed as the bill payer for the utilities at 321 Sondra Drive. The residence did appear to have some construction work being done, and a GMC, S-10 type pick-up was parked in the driveway that day, with an Oklahoma tag ("BEI 570"), which was registered to David S. Andrews. Further investigation revealed that Theresa Cupp had been driving this same vehicle when she was stopped for traffic violations in June and November of 2002. And on both occasions Cupp indicated her address was 321 Sondra Drive. The investigation also revealed that Cupp had been arrested by the Elk City Police in 1996 for "possession of cocaine and marijuana," though she was not convicted, following the suppression of evidence in the case.

¶ 5 Damron's affidavit further states that he himself was present in 1995 when a warrant was served on a different residence at

---

1. The search of Andrews' residence resulted in the discovery of several handguns, over a pound of marijuana, and drug paraphernalia, leading to the convictions challenged on appeal.

2. Defense counsel stated at the time of the bench trial that Andrews was continuing to renew his motion to suppress, but was willing to stipulate to all of the State's evidence.

3. Damron notes in his affidavit that he had been an investigator with the District II Drug Task Force for four years and that he had previously been a special agent with the F.B.I. for over thirty years, with extensive experience in cases involving illegal drugs.

4. Damron does not differentiate in his affidavit between which details were provided to Shirey and which to Daniel. Damron later testified that the close proximity of the phone calls, with virtually identical information reported, left no doubt that the anonymous male caller was the same person in both instances.

which Andrews was then living.[5] Damron notes that Andrews was present at the time, along with a child that Andrews identified as his son, who was approximately five years old.[6] Damron states that the execution of the 1995 search warrant on Andrews' home resulted in the seizure of both illegal drugs and firearms. The affidavit notes that the search resulted in criminal convictions for Andrews in Beckham County, on charges of (1) possession of CDS with intent to distribute, (2) trafficking CDS, (3) possession of marijuana in the presence of a child under twelve, and (4) cultivation of marijuana.[7] Andrews' sentences on the charges were run concurrently, with his longest sentence being imprisonment for twenty years, with the last five suspended. Damron's affidavit confirms that Andrews was still on probation in relation to this case, through 2016.

¶ 6 Andrews asserts that the affidavit of Larry Damron was insufficient to justify the search warrant issued because it was based upon an anonymous tip that was not adequately verified. Andrews' challenge to the validity of the warrant to search his home is properly before this Court, and it is the only issue before this Court.[8]

¶ 7 In *Florida v. J.L.*,[9] the United States Supreme Court discussed anonymous tips and how they are to be evaluated to assess their reliability. The Court noted, "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if [his] allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' "[10] The Court recognized, however, that there are situations in which an anonymous tip can be adequately corroborated, such that there are "sufficient indicia of reliability," which will allow law enforcement officers to take intrusive action based upon the tip.[11] The *J.L.* Court held that the tip in that case provided no basis for evaluating the caller's reliability or his access to "inside information," and thus was inadequate to justify the stop.[12]

¶ 8 Both the Supreme Court and this Court have recognized that a magistrate who is presented an affidavit in support of a search warrant is expected to evaluate the affidavit in light of the "totality of the circumstances," to make a determination of whether there is probable cause to grant the warrant.[13] The magistrate is expected to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."[14]

---

5. Although the affidavit initially refers to the execution of an "arrest warrant" in 1995, a later description of the "search warrant" executed on Andrews' home in 1995 suggests that the 1995 warrant was also a search warrant—and that the reference to an "arrest warrant" was an error. (Damron's subsequent testimony confirms that the 1995 warrant was for a search.)

6. The affidavit notes that this child would currently be thirteen or fourteen years old.

7. The affidavit notes that firearms charges in the case were dismissed under a plea agreement.

8. Andrews filed a motion to suppress on this basis, which was denied after a hearing.

9. 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

10. *Id.* at 270, 120 S.Ct. at 1378 (quoting *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990)) (internal citations omitted).

11. *Id.* (quoting *White*, 496 U.S. at 327, 110 S.Ct. at 2414). In *J.L.*, the question was whether an anonymous phone call tip, which stated that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun, was enough to justify local police officers in approaching the young man and patting him down for weapons, *i.e.*, to justify a *Terry* "stop-and-frisk." *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

12. *See J.L.*, 529 U.S. at 268, 120 S.Ct. at 1377. The Court noted: "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id.* at 271, 120 S.Ct. at 1379.

13. *See Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Langham v. State*, 1990 OK CR 9, ¶¶ 6–7, 787 P.2d 1279, 1280–81.

14. *Gates*, 462 U.S. at 238, 103 S.Ct. at 2332; *Langham*, 1990 OK CR 9, ¶ 7, 787 P.2d at 1281.

And this Court reviews the magistrate's decision to determine whether there was a "substantial basis for concluding that probable cause existed."[15]

¶ 9 We conclude that the anonymous tip in this case was adequately verified by the investigation summarized in Damron's affidavit. The anonymous tip in this case was quite different than the tip in *J.L.;* it was much more detailed, related to a particular named person, at a specific address, and included numerous facts about that person and the other persons living at that address. Law enforcement officers were able to verify the tip's information about who lived in the home, the appearance of the home, and one of the vehicles parked at the home. The anonymous caller provided specific and detailed information about the criminal history and record of Andrews, including accurately describing an arrest in the mid 1990's that resulted in drug and firearms charges and ultimately a twenty-year prison sentence.[16] Hence the anonymous tip provided substantial and verifiable "inside information" regarding Andrews, which suggests that the caller had access to reliable information about him.[17]

¶ 10 In addition, the anonymous caller's description of what appeared to be a marijuana brick, a particular pistol, and a drug transaction was consistent with past behavior by Andrews, which was confirmed by investigation, and hence added to the overall strength of the probable cause affidavit. We do not hesitate to conclude that the anonymous tip in this case was adequately verified, such that there were "sufficient indicia of reliability" to justify reliance upon it. Hence the search warrant for Andrews' home was properly issued.

¶ 11 Andrews asserts that the search warrant should not have been issued because law enforcement officers were unable to specifically verify the anonymous tip's allegations of current illegal activity by Andrews, *i.e.*, possessing and distributing marijuana and being a convicted felon in possession of a gun. This, however, is *not* the test. If law enforcement officers had been able to verify this specific information through their own investigation or even another informant, they would not have needed to rely upon the anonymous caller's information to obtain the search warrant—and may not even have needed a search warrant. The issue is whether the information that law enforcement officers *could* verify from the anonymous tip was adequate to justify reliance upon the tip's assertions of knowledge about other, unverified illegal activity—and whether the totality of the information in the probable cause affidavit, including the information obtained through the subsequent investigation, was sufficient to justify issuance of the search warrant. Once again, we conclude that the anonymous tip was adequately verified in the current case and that the search warrant was properly issued.

¶ 12 This Court recognizes that in *Samson v. California,*[18] the United States Supreme Court recently upheld the constitutionality of a California statute permitting the suspicion-less search of convicted felons who had been released on parole after agreeing, as a condition of being granted parole, to be subject to such searches "with or without a search warrant and with or without cause."[19] The *Samson* Court noted that probationers and parolees are both on the " 'continuum' of state-imposed punishments," with a corresponding continuum of decreased expectation of privacy and freedom from unwanted

---

15. *Id.* (citing *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332).

16. The anonymous tip also accurately stated that Andrews was still on probation in connection with these charges.

17. The anonymous caller's description of Andrews' past involvement with drugs and guns is particularly significant, since it heightens the reliability of the caller's allegations regarding witnessing what appeared to be a drug transaction in Andrews' home the previous night, as well as

the presence of one or more firearms—which Andrews was not allowed to have in his home, since he is a convicted felon. The fact that Damron himself had prior experience with Andrews in connection with drug selling and gun possession further strengthened the overall believability of the tip's allegations.

18. —— U.S. ——, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006).

19. *Id.* at ——, 126 S.Ct. at 2196 (quoting Cal.Penal Code Ann. § 3607(a) (2000)).

searches.[20] The *Samson* Court noted that "parolees ... have severely diminished expectations of privacy by virtue of their status alone." [21] Although Oklahoma does not have a statute akin to the California statute in *Samson*, we note that Andrews was a convicted felon released on parole and that he was being supervised by the probation office. Nevertheless, neither the district court nor this Court needed to rely upon any diminished expectation of privacy on the part of Andrews in the current case.

¶ 13 After thoroughly considering the entire record before us on appeal, including the original record, transcripts, briefs, and exhibits of the parties, we find that all of the convictions and sentences of Andrews should be affirmed.

### Decision

¶ 14 Andrews' convictions and sentences in Beckham County, CF–2003–272 and CF–2003–273, are all **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2007), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

LUMPKIN, P.J., C. JOHNSON, V.P.J., A. JOHNSON and LEWIS, JJ., concur.

**20.** *Id.* at ——, 126 S.Ct. at 2198 (citing *United States v. Knights,* 534 U.S. 112, 119, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001)).

**21.** *Id.* at ——, 126 S.Ct. at 2199.