STAHL, Senior Circuit Judge,
dissenting.
I write briefly to dissent from the majority’s able opinion. I believe there are important distinctions between Samson v. California, — U.S.-, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), and the case before us, and would therefore employ the special needs test and conclude that the suspicionless search mandated by the DNA Act is an unconstitutional violation of the Fourth Amendment. Where a right as central to our liberty as the freedom from unreasonable searches and seizures is at stake, I am unwilling to go further in restricting that right than the Supreme Court has explicitly required.
The majority is correct that Samson moved one step beyond United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), by using the totality of the circumstances test to approve a suspi-cionless search of a paroled individual without warrant or cause. However, in permitting this particular suspicionless search, the Court merely identified, in its own language, an additional “limited circumstance[ ]” in which a suspicionless search can survive Fourth Amendment review. In my view, the condition highlighted by the Court which gave rise to this additional limited circumstance is not present in the case before us.
In justifying its use of the totality of the circumstances test in a suspicionless search case, the Court wrote:
Therefore, although this Court has only sanctioned suspicionless searches in limited circumstances, namely programmatic and special needs searches, we have never held that these are the only limited circumstances in which searches absent individualized suspicion could be “reasonable” under the Fourth Amendment. In light of California’s earnest concerns respecting recidivism, public safety, and reintegration of parolees into productive society, and because the object of the Fourth Amendment is reasonableness, our decision today is far from remarkable.
Samson, 126 S.Ct. at 2201 n. 4. In others words, as I read this passage, the Supreme Court has now identified three limited circumstances in which a suspicionless search will survive Fourth Amendment review: (1) programmatic searches; (2) special needs searches; and (3) searches conducted as part of a state’s conditional release *19 program. This last category is limited by the Court’s language to a state search program that is genuinely designed to improve the monitoring and reintegration of conditional releasees.
In my view, the DNA extraction and cataloging program mandated by the DNA Act does not fit within this third limited category. As the majority makes clear, the plain language of the Act and its legislative history show that the purpose of the DNA Act is future crime-solving. Nothing more. It is not part of an earnest effort on the part of the state to monitor and reintegrate conditional releasees into society.
Because the Act does not satisfy the limited circumstance that validated the search in Samson, in order to survive Fourth Amendment review as a suspicion-less search it must constitute either a programmatic search (which no party has contended) or a special needs search.[14] I agree with the majority that because “law enforcement objectives are central to the DNA Act ... the analysis applicable to special needs ‘beyond the normal need for law enforcement’ is inapplicable here.” Ante at 11 (citation omitted). Therefore, I would hold the suspicionless search at issue here unconstitutional under the Fourth Amendment, as it does not meet the criteria of any of the three limited circumstances for constitutional suspicionless searches that have been identified by the Supreme Court.
Having made this narrow legal point, I am also compelled to raise my grave concern that the majority’s totality of the circumstances analysis represents a further unfortunate step in the continuing erosion of the Fourth Amendment’s vital protections. By assigning so little weight to the privacy invasion posed by placement of one’s unique DNA in a national database, and such overwhelming weight to the state’s interest in future crime solving, the majority unfortunately lays the groundwork for the expansion of such analysis beyond the category of prisoners, parolees, probationers, and those on conditional release, to include ordinary citizens who, because of their employment, activity, or position in society, also could be said to have a reduced expectation of privacy.
I recognize that the majority leaves for another day the question of the right to retain the DNA profile in the CODIS database following the conclusion of appellee’s supervised release period. However, other circuits have already decided this question and found such a limitation unnecessary. See, e.g., United States v. Sczubelek, 402 F.3d 175, 184-85 (3rd Cir.2005) (analogizing permanent retention of DNA profiles to permanent retention of fingerprints and photographs); cf. United States v. Kincade, 379 F.3d 813, 875 (9th Cir.2004) (Kozinski, J., dissenting) (“As a practical matter ... the chance that Kincade could have his DNA removed from the CODIS database once he completes his supervised release is about the same as the chance that someone arrested and fingerprinted, but eventually found innocent, could force the FBI to delete his fingerprints from its database, namely nil.”).
It was said by Edmund Burke, “The true danger is when liberty is nibbled away, for expedients, and by parts.” I cannot, in good conscience, sign on to a *20 decision that I believe provides the legal rationale for an enormous expansion of state intrusion into the most private of realms, without warrant, probable cause, or even suspicion.
Therefore, I respectfully dissent.

. As I read Samson, the Supreme Court has left open the possibility that other types of suspicionless searches might also survive Fourth Amendment review under the totality of the circumstances test. I see no reason to conclude that the DNA Act comprises a fourth exception to the general requirement of individualized suspicion. In addition, in order to protect the integrity of the Fourth Amendment, I would leave it to the Supreme Court to identify additional exceptions to the general rule.