SCHROEDER, Circuit Judge,
dissenting:
This is a case in which the government seeks to extract a DNA sample as a condition of every pretrial release without either a warrant or a showing of probable cause to conduct DNA profiling. No circuit has ever before approved such a warrantless search or seizure before an individual has been convicted of any crime. DNA sampling can of course confirm identity, but it also provides infinitely more information about an individual than fingerprints. The majority and the concurring opinions now uphold the constitutionality of the proposed search and seizure because they find that Pool has failed to show that they would unduly burden his reduced privacy interests as a pretrial defendant. I disagree and would hold that the government fails to justify a Fourth Amendment exemption of this magnitude.
The latest congressional enactments challenged in this case extend mandatory DNA testing requirements to individuals who have not yet been convicted of any crime. See DNA Fingerprint Act of 2005, Pub.L. No. 109-162, §§ 1004(a)(1)(A), 1004(b), 119 Stat. 2960, 3085-86 (2006) (co *1235 dified at 18 U.S.C. §§ 3142(b) and (c)(1)(A); 42 U.S.C. § 14135a(a)(l)(A)); Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, § 155, 120 Stat. 587, 611 (2006) (codified at 42 U.S.C. § 14135a(a)(l)(A)). The relevant provisions require pretrial defendants to submit to DNA testing as a condition of pretrial release. See 18 U.S.C. § 3142(b). The Attorney General has promulgated regulations ordering all federal agencies to obtain DNA samples to the extent authorized by the statute. See 28 C.F.R. § 28.12(b).
The majority would uphold the warrant-less pretrial seizure by applying the “totality of the circumstances” test that balances the intrusion into privacy of the individual against the interest in protecting society as a whole. The Supreme Court has upheld searches as a condition of release under this test only after an individual has been convicted of a crime and hence has a lowered privacy interest. See, e.g., Samson v. California, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006) (upholding search conducted pursuant to California law requiring parolees to consent to suspicionless searches at any time as condition of release); United States v. Knights, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (holding that only reasonable suspicion was needed to justify search where probationer had consented to be searched as a condition of probation).
We have twice considered statutes requiring mandatory DNA testing of those involved in the criminal justice system, and in both a majority upheld the DNA seizure only because the earlier statutes that were at issue in those cases limited the warrant-less DNA seizure to persons who had been convicted of crimes. In the first, United States v. Kincade, 379 F.3d 813, 816-17 (9th Cir.2004) (en banc), we considered the constitutionality of the DNA Analysis Backlog Elimination Act of 2000, Pub.L. No. 106-546, 114 Stat. 2726 (2000), which required DNA testing of individuals who had been convicted of certain enumerated violent felonies and who were incarcerated or on parole, probation, or supervised release. The ease generated significant debate among the members of our court, and ultimately resulted in a divided en banc decision upholding the constitutionality of the search on the basis of two different Fourth Amendment theories. Compare id. at 816-40 (O’Scannlain, J., plurality opinion) (upholding DNA testing under “totality of the circumstances” theory), with id. at 840-42 (Gould, J., concurring) (concurring in judgment under special needs theory). The fact of conviction, however, was indispensable to both theories. Id. at 834 (plurality opinion) (recognizing the “transformative changes wrought by a lawful conviction”); id. at 840 (Gould, J. concurring) (focusing on special need to deter recidivism by convicted felons). Moreover, five judges dissented, concluding that the intrusion into privacy occasioned by DNA sampling could not be justified even after a lawful conviction. See id. at 842-871(Reinhardt, J., dissenting); 871-75 (Kozinski, J., dissenting); 875-76 (Hawkins, J., dissenting). The dissenting judges objected to the fact that the government sought to conduct “a programmatic search designed to produce and maintain evidence relating to ordinary criminal wrongdoing ... without any level of individualized suspicion.” Id. at 843(Re-inhardt, J., dissenting). They also predicted a slippery slope toward ever-expanding warrantless DNA testing. See id. at 872(Kozinski, J., dissenting) (“If collecting DNA fingerprints can be justified [here], then it’s hard to see how we can keep the database from expanding to include everybody.”).
We revisited the issue when Congress expanded the same statute to reach individuals convicted of any federal felony, *1236 crime of violence, or sexual abuse crime. See United States v. Kriesel, 508 F.3d 941 (9th Cir.2007) (considering constitutionality of Justice For All Act of 2004, Pub.L. No. 108-105, § 203(b), 118 Stat. 2260, 2270 (2004)). Kriesel was again contentious, with the majority upholding the constitutionality of the statutory expansion on narrow grounds, over a vigorous dissent. Compare id. at 942-50(McKeown, J., majority opinion) with id. at 950-58 (B. Fletcher, J., dissenting). The majority explicitly limited its constitutional ruling to the case before it, in which the individual raising the Fourth Amendment challenge was a convicted felon. Id. at 943 n. 3 (majority opinion). The dissent contended that the reasoning of Kincade, and the government’s purported interests, did not extend to those convicted of non-violent crimes. See id. at 953-58(B. Fletcher, J., dissenting).
We consider here, for the first time, a statute and associated regulations requiring mandatory DNA testing as a condition of pretrial release for every individual charged with a federal offense, a condition imposed before the individual can plead or stand trial. The majority relies on our prior holdings in Kincade and Kriesel to find Congress’s expansion of DNA testing to pretrial defendants constitutional, but ignores our rationale in those cases. We held that mandatory DNA testing is consistent with the Fourth Amendment after conviction because (a) a convicted felon’s privacy interest is greatly reduced in comparison to the general citizenry; and (b) the government’s interest in invading such a person’s privacy is greater. Kincade, 379 F.3d at 834; Kriesel, 508 F.3d at 947, 949. In Kincade, we explained that a conviction changed the analysis on both sides of the balance:
[The] transformative changes wrought by a lawful conviction and accompanying term of conditional release are well-recognized by the Supreme Court, which often has noted that conditional releasees enjoy severely constricted expectations of privacy relative to the general citizenry — and that the government has a far more substantial interest in invading their privacy than it does in interfering with the liberty of law-abiding citizens.
379 F.3d at 834. None of these considerations apply here. Similarly, in Kriesel, we recognized that “[a]s a direct consequence of [an individual’s] status as a supervised releasee, he has a diminished expectation of privacy” and held that the governmental interests advanced in Kincade applied to convicted non-violent felons “with equal force.” 508 F.3d at 947, 949. If there was, as the majority describes, a “watershed event” that justified what would otherwise be an unconstitutional seizure, the event was a conviction; not a post-arrest probable cause determination.
It is because a conviction is what distinguishes parolees, probationers, and those on supervised release from members of the general public that our court has squarely held that warrantless searches and seizures violate pretrial defendants’ Fourth Amendment rights. In United States v. Scott, 450 F.3d 863 (9th Cir.2006), we held that conditioning pretrial release upon a defendant’s consent to warrantless drug testing was unconstitutional. We so held even though such testing provides very limited information and could serve a rehabilitative purpose. Our court has also decided that forcible extraction of a DNA sample from a pretrial detainee is unconstitutional. See Friedman v. Boucher, 580 F.3d 847 (9th Cir.2009). In Friedman, the government acknowledged the DNA was taken for the law enforcement purpose of placing it in a cold case data bank. Id. at 851. We held that as a pretrial detainee, the defendant retained his clearly established Fourth Amendment rights. Id. at 860. Friedman squarely rejected the con *1237 tention that the testing could be justified by our holdings in Kincade and Kriesel, because “both of those cases concerned extracting DNA from convicted felons still under state supervision,” whereas Friedman had not yet been convicted of the crime with which he was charged. Id. at 857.
The majority and concurring opinions thus conflict with both Friedman and Scott in holding that a probable cause determination, rather than a conviction, constitutes the “watershed event” that results in a diminished expectation of privacy. My colleagues try to circumvent Friedman by suggesting that in Friedman, there was no statute authorizing the search, but a statute does not trump the Constitution. They dismiss Scott by suggesting that the privacy interest in one’s home, which we recognized in Scott, is greater than the privacy interest in one’s body. This is not supported by authority or common sense. See, e.g., Schmerber v. California, 384 U.S. 757, 769-70, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (recognizing the heightened privacy interest “with respect to intrusions beyond the body’s surface”).
My colleagues point as well to prison security cases that deal with pretrial defendants who are being temporarily detained in a jail or prison facility. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). They similarly point to authority involving the detention of defendants who present a demonstrated danger to the community. See United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). These cases, which deal with the conditions of confinement, and the individualized decision to detain a defendant until trial, are inapposite here, when the defendant has not yet been determined to present any flight risk or danger to the community and we are not concerned with prison security.
Absent a warrant or a showing of probable cause to conduct DNA profiling in this case, the government bears the burden to show that a Fourth Amendment exception justifies that the searches or seizures are “reasonable.” United States v. Brown, 563 F.3d 410, 414-15 (9th Cir.2009) (“A warrantless search is unconstitutional unless the government demonstrates that it ‘fall[s] within certain established and well-defined exceptions to the warrant clause.’ ”). The government cannot demonstrate that an exception under the “totality of the circumstances” approach applies because Pool, as a pretrial defendant, does not have the reduced privacy interests of the convicted felons in Kincade or Kriesel. Nor, as the majority opinion acknowledges, can the government plausibly rely on the “special needs” exception, because that exception cannot apply to searches and seizures conducted for general law enforcement purposes. See Friedman, 580 F.3d at 853. Pool does not bear the burden to establish that the government will fail to protect his privacy interests after the DNA sample is taken. Both of my colleagues misallocate the burden of proof.
Because Pool’s privacy interests have not been diminished as a result of any conviction, the “intrusion” the government must justify is significant. The government seeks to seize, and indefinitely retain, not only individuals’ DNA profiles, but rather samples of individuals’ entire DNA. See 42 U.S.C. § 14132(b)(3); 73 Fed.Reg. 74,932-01, 74,937-38 (Dec. 10, 2008). These samples contain “massive amounts of personal, private data” including information about a “person’s health, propensity for particular disease, race and gender characteristics, and perhaps even propensity for certain conduct.” Kincade, 379 F.3d at 842 (Gould, J., concurring). The statute permits DNA samples to be disclosed to criminal justice agencies, in *1238 judicial proceedings, for criminal defense purposes, and even, if personally identifiable information is removed, for research purposes. 42 U.S.C. § 14132(b)(3).
The privacy concerns implicated by the seizure, and storage, of DNA material, and the personal information it contains, is certainly substantial. The concurring opinion makes much of the difference between DNA samples and DNA profiles, but it rightly acknowledges that the DNA sample, if fully analyzed, contains a vast amount of information. The concurring opinion diminishes the significance of the fact that the government cannot seize a DNA profile; it must seize a DNA sample in order to create a profile. The seizure and indefinite storage of the sample, which is what that the government must justify under a Fourth Amendment exception, is very different from fingerprinting and other traditional booking procedures.
The majority also errs when it suggests that we are bound by Kincade’s characterization of the information produced from a DNA sample as “minimally invasive.” This is not binding circuit law, as this aspect of the plurality’s opinion failed to garner majority support. See Kincade, 379 F.3d at 842 (Gould, J., concurring) (“DNA stores and reveals massive amounts of personal, private data about that individual, and the advance of science promises to make stored DNA only more revealing in time.”). Moreover, this court’s decision in Kriesel held instead that any privacy concerns were reduced because of the defendant’s lawful conviction. 508 F.3d at 948. It expressly refused to adopt the Kincade plurality’s reasoning on the degree of invasion, noting that “[t]he concerns about DNA samples being used beyond identification purposes are real and legitimate.” Id. Indeed, the Supreme Court held in Schmerber that “[t]he interests in human dignity and privacy which the Fourth Amendment protects forbid any ... intrusions [beyond the body’s surface] on the mere chance that desired evidence might be obtained.” 384 U.S. at 769-70, 86 S.Ct. 1826.
Finally, the majority errs in equating the government’s interests in this case with those identified in Kincade and Kriesel because under Friedman and Scott, the government may not rely on those interests when pretrial detainees are involved. Our decision in Friedman squarely forecloses the government’s reliance on using the DNA samples of pretrial defendants to solve past and future crimes. See 580 F.3d at 858. Friedman held that DNA extraction from a pretrial defendant violated the Constitution where the government’s purpose “was simply to gather human tissue for a law enforcement databank, an objective that does not cleanse an otherwise unconstitutional search.” Id. Nor may the government rely on a generalized interest in preventing the commission of crimes by pretrial defendants. Scott rejected “the assumption that [a pretrial defendant is] more likely to commit crimes than other members of the public, without an individualized determination to that effect.” 450 F.3d at 874. Finally, an interest in “reducing recidivism” is meaningless where the defendant has not yet been convicted of an initial crime. In this case, Pool has no prior criminal record.
For all of the forgoing reasons, I respectfully dissent.