CADY, Justice
(concurring specially).
I agree with the holding reached by the majority. The search and seizure clause under the Iowa Constitution does not permit a police officer exercising general law enforcement authority to conduct a suspi-cionless search of a parolee. I write separately because I believe the majority has not fully identified and explained the key reason for our departure from a contrary holding by the United States Supreme Court under the nearly identical Search and Seizure Clause of the Federal Constitution.
The test used to decide the validity of a warrantless search under article I, section 8 is one of reasonableness. State v. Naujoks, 637 N.W.2d 101, 107 (Iowa 2001). This test balances the individual privacy interests at stake against the legitimate interests of the state. Id. It is derived from the language of article I, section 8 and is a test we have applied in the past. See id. It conforms to the test applied under the Fourth Amendment to the Federal Constitution. State v. Kreps, 650 N.W.2d 636, 640-41 (Iowa 2002).
*293 Of course, the test does not readily determine the outcome; it only provides the framework for the analysis. The outcome is a product of an evaluation of the competing interests through the lens of reasonableness. In the end, if the privacy right left by allowing the government to search is reduced to a point that would nullify the purposes of the freedoms demanded by the constitution, the search is unreasonable. On the other hand, an outcome that supports a warrantless search under the circumstances of a particular case gives rise to an exception to the general requirement for a warrant under article I, section 8, which can then be applied in other similar cases and used to guide government officials in their actions. In this case, the issue is whether an exception to our warrant requirement authorizes state officials to conduct a search of a person’s home based solely on the person’s status as a parolee.
The interests of the state in searching a parolee and the individual privacy interests of a parolee at stake in this case are the same interests identified in Samson v. California, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006). In deciding if it was reasonable for government officials to conduct a suspicionless search of a parolee, the Court first considered the privacy interests of a parolee. Samson, 547 U.S. at 850-52, 126 S.Ct. at 2198-99, 165 L.Ed.2d at 258-59. It found the parolee’s interests exceeded those of a prisoner, but were less than those of a probationer and, of course, even less than the privacy interests possessed by an ordinary citizen. Id. The Court determined the diminished privacy interests of a parolee were justified in our society by the essential supervision that is attached to parole and the myriad conditions needed to be imposed on the freedoms of a criminal on parole from prison for a parole program to succeed, including the condition that a parolee submit to random searches. Id. at 851-52, 126 S.Ct. at 2199, 165 L.Ed.2d at 258-59.
The Court next considered the government interests at stake. Id. at 853, 126 S.Ct. at 2200, 165 L.Ed.2d at 259-60. It determined the state had an overwhelming interest in closely supervising parolees, and reducing recidivism to promote reintegration in positive citizenship for parolees. Id. In balancing these two competing interests, the court found the Fourth Amendment did not prohibit a police officer from searching a parolee without suspicion of criminal activity. Id. at 857, 126 S.Ct. at 2202, 165 L.Ed.2d at 262.
The dissenting opinion in Samson quibbled slightly with the extent to which parole reduces the privacy interests of a parolee relative to an ordinary citizen, asserting that the privacy interests of parolees should be on par with those of probationers. Id. at 861-62, 126 S.Ct. at 2204-05, 165 L.Ed.2d at 265-66 (Stevens, J., dissenting). Notwithstanding, the persuasiveness of the dissent can be found in its analysis of the legitimate government interests at stake. Importantly, the dissent did not challenge the legitimacy of the underlying interest of the state to supervise parolees and place conditions that deprive them of rights enjoyed by ordinary citizens. It recognizes these legitimate interests may justify suspicionless searches. The dissent in Samson concluded:
Had the State imposed as a condition of parole a requirement that petitioner submit to random searches by his parole officer, who is “supposed to have in mind the welfare of the [parolee]” and guide the parolee’s transition back into society, ... the condition might have been justified ... under the special needs doctrine .... Likewise, this might have been a different case ... if the State *294 had had in place programmatic safeguards to ensure evenhandedness.
Id. at 864-65, 126 S.Ct. at 2207, 165 L.Ed.2d at 267-68 (citation omitted) (quoting Griffin v. Wisconsin, 488 U.S. 868, 876, 107 S.Ct. 3164, 8170, 97 L.Ed.2d 709, 719 (1987)). Nevertheless, the Samson dissent found such legitimate interests were not served when a search was done by a police officer who was independent and detached from the mission of parole and was merely performing general law enforcement duties. See id. at 864-65, 126 S.Ct. at 2207, 165 L.Ed.2d at 267. Thus, the dissent did not undermine the general legitimacy of the state’s interest in searching parolees, but suggested the government interest in searching parolees needed to be carried out by a parole officer so that the activity could properly fit within the special-needs exception to the warrant requirement relating to searches justified by needs beyond general law enforcement.
This observation is the critical point in the analysis. While I agree with the majority that the State did not satisfy its burden to show reasonableness based on particular facts and circumstances at the time of the search, it is also true that individualized suspicion would not be necessary when the state agent performing the search is furthering the goals involved with parole as to the particular parolee being searched. Importantly, the state’s interest in monitoring and supervising a parolee, while quite legitimate, primarily loses its muscle in this case when offered to support the actions of a police officer detached from the mission of supervising and monitoring parolees. On balance, the parole mission, not a mission of general law enforcement, supplies the state with its limited right to search a parolee’s home without a warrant. As a result, the balancing between the relatively minimal privacy interests of a parolee and the tenuous interests of the state under the circumstances of this particular case does not favor a search based on parole status alone. The majority’s opinion fails to recognize this strong interest to monitor parolees, which must not be lost in any analysis. The only fact that prevents the balancing of interests in this case from tipping in favor of the state and from ultimately creating a broader special needs reasonableness exception to search parolees is the absence of a person who is conducting the search within the rubric of the parole mission.[11] Although a state agent’s identity as a parole officer alone would not create a per se exception in all parolee searches, the confluence of such a status and the purpose behind a search associated with it is legitimate and merits strong recognition in a reasonableness analysis.
It is necessary to recognize the mission of parole in the balancing analysis because it permits the state to use this interest to supervise and monitor parolees to conduct searches in those instances when the interest is actually at stake and, at the same time, protects, as required by article I, section 8, even those people in our society with the reduced expectation of privacy from unreasonable intrusions into their lives when the state’s interest is not at the forefront of the search. Moreover, this outcome is consistent with the line of cases that distinguish between special needs unrelated to general law enforcement that support a suspicionless search and interests involving enforcement of criminal laws *295 that do not support a suspicionless search. In those cases involving mixed criminal and noncriminal interests, the government interests used to test the reasonableness of the search under the constitution, just as in this case, are those that form the primary goal or aim of the search. See Ferguson v. City of Charleston, 532 U.S. 67, 79-81, 121 S.Ct. 1281, 1289-90, 149 L.Ed.2d 205, 217-19 (2001); see also City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S.Ct. 447, 453, 148 L.Ed.2d 333, 343 (2000).
The rights of parolees we recognize under our state constitution result from an analysis not far removed from the analysis of those rights identified by the United States Supreme Court. Yet, we must follow an analysis that allows the real interests at stake to be balanced, which permits the constitutional requirement of reasonableness to be maintained both by the state and the individual.

. Although we decided previously in State v. Cullison, 173 N.W.2d 533, 537-38 (Iowa 1970), that parole officers are not justified in warrantlessly searching the home of a parolee based on the parolee’s status alone, we did not, in that case, balance the legitimate interests of the state in parole supervision with the parolee’s interest in privacy.