Easterbrook, Circuit Judge.
*837 Members of a certified class contend that during 2011 female inmates at an Illinois prison were strip-searched as part of a training exercise for cadet guards. The district court summarized the allegations this way:
[Plaintiffs] were required to stand naked, nearly shoulder to shoulder with 8-10 other inmates in a room where they could be seen by others not conducting the searches, including male officers. Menstruating inmates had to remove their tampons and sanitary pads in front of others, were not given replacements, and many got blood on their bodies and clothing and blood on the floor. The naked inmates had to stand barefoot on a floor dirty with menstrual blood and raise their breasts, lift their hair, turn around, bend over, spread their buttocks and vaginas, and cough.
Thogmorton v. Reynolds, 2016 WL 11265636 at*2, 2016 U.S. Dist. LEXIS 194393 at *6 (C.D. Ill. Apr. 14, 2016). Plaintiffs maintained that such an inspection-unnecessary for security and conducted in an offensive manner-violated their rights under both the Fourth Amendment and the Eighth Amendment, applied to the states by the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.
The district court awarded summary judgment to defendants on the Fourth Amendment theory, because Johnson v. Phelan , 69 F.3d 144 (7th Cir. 1995), and King v. McCarty , 781 F.3d 889 (7th Cir. 2015), hold that a visual inspection of a convicted prisoner is not subject to analysis under that amendment, though a claim properly lies under the Eighth Amendment if an unnecessary or demeaning inspection amounts to punishment. The Eighth Amendment claim went to trial, and a jury returned a verdict for the defendants. Plaintiffs do not contest the verdict but ask us to reinstate their Fourth Amendment theory. Because analysis under the Fourth Amendment is objective, see Graham v. Connor , 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), while a successful claim under the Eighth Amendment depends on proof of a culpable mental state, see Whitley v. Albers , 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), plaintiffs believe that they could succeed on a Fourth Amendment theory despite the jury's verdict.
The Fourth Amendment applies only to the extent that prisoners retain a legitimate expectation of privacy. Johnson and King rely on Hudson v. Palmer , 468 U.S. 517, 524-30, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which holds that prisoners lack privacy interests in their cells and implies that they lack any legitimate expectation of privacy inside prison walls. The judgments of conviction allow wardens to control and monitor their charges' lives, extinguishing the rights of secrecy and seclusion that free people possess. But Hudson did not consider whether convicted prisoners have some residual privacy interest in their persons, as opposed to their possessions and surroundings. The Justices have not returned to that subject in later decisions. Decisions in this circuit look in both directions on that topic. Compare King with, e.g., *838 Peckham v. Wisconsin Department of Corrections , 141 F.3d 694 (7th Cir. 1998).
King reconciles the circuit's competing strands of thought this way: the Fourth Amendment does not apply to visual inspections of convicted prisoners but does apply to procedures that entail intrusions within prisoners' bodies. 781 F.3d at 899-901. That approach is justified not only by the holding of Hudson but also by the need to maintain the subjective component of Eighth Amendment analysis. In decisions such as Whitley the Justices stressed that guards will take many steps that offend and even injure prisoners, yet contribute to prison management and security. Only those steps that are unnecessary and intended to produce injury, the Court explained, should be actionable.
An appropriate balance of prisoners' interests against the needs of prison management is achieved through normal Eighth Amendment analysis, which has both objective and subjective elements. See also, e.g., Helling v. McKinney , 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) ; Farmer v. Brennan , 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Applying the Fourth Amendment to all unwelcome observations of prisoners would eliminate the subjective component and create a sort of Eighth Amendment lite, defeating the objectives that the Justices sought to achieve by limiting liability in Whitley and similar decisions. See King , 781 F.3d at 900-01.
Even when the Fourth Amendment or the Due Process Clause applies, as one or the other will before conviction, strip searches often are reasonable and thus permissible. See Florence v. Board of Freeholders , 566 U.S. 318, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012) ; Bell v. Wolfish , 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). But the absence of a subjective component in determining what is reasonable under the Fourth Amendment would produce outcomes that depart from the approach required by Whitley for prisoners after conviction. It would effectively equate the rights of convicted prisoners with those of arrestees or pretrial detainees. Many decisions hold that convicts' rights are more limited.
King obliged the district judge to resolve this case as he did. Plaintiffs allege a visual inspection, not a physical intrusion. They maintain that each inmate had to manipulate her own body but do not contend that the prison's staff touched any inmate. A prisoner's need to touch her own body does not differentiate this situation from that of Florence , which concluded that a visual inspection (visual on the guards' part) is reasonable even with respect to pretrial detainees.
Plaintiffs ask us to overrule Johnson and King to the extent that they deem the Fourth Amendment inapplicable to visual inspections of convicted prisoners. We decline.
The law in some other circuits is favorable to plaintiffs. See, e.g., Harris v. Miller , 818 F.3d 49, 57 (2d Cir. 2016) ; Hutchins v. McDaniels , 512 F.3d 193, 196 (5th Cir. 2007). The law in this circuit does not favor plaintiffs, however, and decisions such as Hudson are at best neutral. If the flat declaration in Hudson that a prisoner lacks any legitimate expectation of privacy in a cell, 468 U.S. at 526, 104 S.Ct. 3194, applies only while the prisoner is in a cell, that still falls short of establishing that the Fourth Amendment applies elsewhere in a prison. And we know from Samson v. California , 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), that even after conditional release a convicted person has a severely diminished expectation of privacy until the end of the sentence. Samson allowed a parolee to be searched without either probable cause or suspicion, and it *839 stressed the extent to which a conviction curtails privacy.
The most one can say for plaintiffs is that judges, including those within the Seventh Circuit, have disagreed about whether the Fourth Amendment ever prevents guards from viewing naked prisoners. Johnson was decided over a dissent. A concurring opinion in King expressed doubt about the majority's analysis, as a concurring opinion in Peckham expressed doubt about the analysis of the majority there.
It has been 35 years since the Justices last considered the extent to which convicted prisoners have rights under the Fourth Amendment while still inside prison walls. For more than 20 years it has been established in this circuit that the Fourth Amendment does not apply to visual inspections of prisoners. It is best to leave the law of the circuit alone, unless and until the Justices suggest that it needs change.
AFFIRMED