# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 8, 2008 Session

## STATE OF TENNESSEE  v. CHARLOTTE YVONNE TURNER

**Appeal from the Circuit Court for Obion County**
**No. C07-192     William B. Acree, Jr., Judge**

---

**No. W2007-01590-CCA-R3-CD  - Filed April 29, 2008**

---

The State of Tennessee appeals the decision of the Obion County Circuit Court suppressing evidence obtained as a result of a police search of the residence of the Appellee, Charlotte Yvonne Turner. Turner, a parolee, was convicted of drug related offenses in Kentucky, with her parole being subsequently transferred to Tennessee.  Turner's vehicle was stopped by Union City police officers, who were familiar with her status as a parolee.  After the stop, Turner and the vehicle were searched for drugs based upon one officer's suspicion that she was involved in drug activity.  After a fruitless search for contraband of both her person and vehicle, the officer demanded that Turner allow a search of her home, pursuant to a condition of her parole.  No drugs were found during the search of her residence; however, Turner directed officers to a handgun, which was located in a bedroom. The weapon was seized, and Turner was subsequently indicted for unlawful possession of a weapon by a convicted felon.  Turner filed a motion to suppress the evidence, which the trial court granted. On appeal, the State argues that the search of the residence was lawful under the recent holding of the United States Supreme Court decision of *Samson v. California*, 547 U.S. 843, 126 S. Ct. 2193 (2006).  After review, we conclude that the police search of Turner's residence was unreasonable and affirm the ruling of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the Appellant, State of Tennessee.

James T. Powell, Union City, Tennessee, for the Appellee, Charlotte Yvonne Turner.

## OPINION

### Factual Background & Procedural History

On June 4, 2007, an Obion County grand jury returned an indictment charging the Appellee with unlawful possession of a weapon by a person who has been convicted of a felony drug offense, pursuant to Tennessee Code Annotated section 39-17-1307(b)(1) (2006). The Appellee filed a motion to suppress the evidence, and a hearing was held on the motion on June 22, 2007.

The following sequence of events was established at the suppression hearing. Officer Shawn Palmer, a Union City police officer assigned to the 27th Judicial Drug Task Force, testified that, based upon his position in law enforcement, he was familiar with the Appellee's criminal history in Obion County. He was further aware that the Appellee was on parole in Kentucky for a drug offense and that her parole had been transferred to a parole officer in Tennessee.[1] Officer Palmer testified that, sometime prior to April 3rd, he had received information from an unidentified informant that the Appellee was selling crack cocaine. He recalled that he briefly discussed the Appellee's status with her parole officer while investigating this information. A copy of the Appellee's parole certificate from Kentucky was admitted as an exhibit at the hearing. Also admitted was a document containing the rules and conditions of her parole in Tennessee, which was signed by the Appellee. Rule 8 of the parole document states that the Appellee "agree[s] to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole Officer or law enforcement, at any time."

On April 3, 2007, Officer Palmer saw the Appellee driving her vehicle in Union City. He testified that he stopped the Appellee's vehicle for a seatbelt violation; however, he admitted that the seatbelt violation was, "without a doubt," a pretext and that he actually intended to investigate the alleged tip regarding possible drug possession and activity. At the scene of the vehicle stop, Officer Palmer contacted the Appellee's parole officer again to verify her rules of parole. He testified that he conducted a search of the Appellee, and he found $975 in her pocket, which he seized. However, Officer Palmer did not find any controlled substances in the Appellee's car or on her person.

Officer Palmer testified that he informed the Appellee that the officers wanted to search her house, but she initially refused consent. He responded to her refusal, "[f]ine, we'll just call your parole officer [and] tell her that you're not cooperating." After the Appellee called her parole officer, she agreed to meet the officers at her house. Approximately twenty minutes later, the Appellee met the officers at her residence and admitted that there was a gun inside the house. After the Appellee unlocked her door, the police officers searched the house and recovered a loaded .38 caliber revolver on a bed and a round of ammunition in a dresser drawer. No drugs or drug paraphernalia were found inside the residence. The Appellee was subsequently arrested for unlawful possession of a handgun by a convicted felon. Officer Palmer testified that, from the initial traffic stop to the conclusion of the home search, the time elapsed was approximately one hour.

---

[1] Such parole transfers are governed by the Interstate Compact for Supervision of Adult Offenders, which is set forth at Tennessee Code Annotated sections 40-28-401 and -402.

The Appellee testified that when Officer Palmer stopped her vehicle, he instructed her to get out of the car, and he began searching her. She stated that Officer Palmer did not ask for her driver's license or vehicle registration, and he said nothing regarding a seatbelt violation. After Officer Palmer searched her vehicle, the Appellee recalled that he instructed her to drive to her house and apprised her that he intended to search the house. She testified that Officer Palmer told her "if I didn't go to my house he was gonna [sic] call my [parole officer] or he was gonna [sic] take me to jail anyway." The Appellee called her parole officer, who read her Rule 8, regarding warrantless searches by law enforcement, and she met the officers at her house, which they searched. The Appellee testified that the time elapsed between the initial traffic stop and her arrest was approximately two hours.

At the conclusion of the hearing, the trial court granted the Appellee's motion to suppress. Although the court found that the initial stop and search of the Appellee was reasonable, it found that the officers' requirement of the Appellee "to go to another location with no basis whatsoever and detain her for one to two hours . . . constitute[d] an harassing, capricious and arbitrary search[,]" that the search of the Appellee's home was not supported by reasonable suspicion, and that it was in violation of the Fourth Amendment. The State appeals this ruling of the trial court.

**Analysis**

The State argues on appeal that the trial court erred in granting the Appellee's motion to suppress, relying on the decision of the United States Supreme Court in *Samson*, 547 U.S. 843, 126 S. Ct. 2193. The State contends that in *Samson*, the United States Supreme Court was "crystal clear in its ruling that a police officer is not prohibited from conducting a suspicionless search of a parolee who is subject to conditions of parole permitting such searches."[2]

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence was set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996).

> Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." [*Odom*, 928 S.W.2d] at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)).

---

[2]In *State v. Davis*, this court reviewed a condition of probation identical to the parole condition presently at issue in this case. We concluded in *Davis* that it was "unnecessary to address the broader issue of the constitutionality of the warrantless search condition of probation" because the search was permitted based on the facts that: "(1) the warrantless search provision was reasonably related as a condition of the [a]ppellant's probation; and (2) the attempted warrantless search of the [a]ppellant's residence was supported by reasonable suspicion." 191 S.W.3d 118, 121-22 (Tenn. Crim. App. 2006).

*State v. Cox*, 171 S.W.3d 174, 178-79 (Tenn. 2005). Nevertheless, we review *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *Id.* at 179 (citing *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999)).

The Fourth Amendment to the United States Constitution guarantees that "the right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause . . . ." Article I, section 7 of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

*State v. Stephenson*, 195 S.W.3d 574, 592 n.13 (Tenn. 2006). This constitutional provision is identical in intent and purpose with the Fourth Amendment. *Id.* (citing *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997)); *see also Sneed v. State*, 423 S.W.2d 857, 860 (Tenn. 1968). "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19, 122 S. Ct. 587, 591 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297, 1300 (1999)). Under both the federal and state constitutions, warrantless seizures are presumed unreasonable and evidence obtained from such seizures should be suppressed unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971); *State v. Watkins*, 827 S.W.2d 293, 295 (Tenn. 1992).

In *Samson v. California*, the United States Supreme Court addressed the constitutionality of a California statute which provided that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Samson*, 547 U.S. at 846, 126 S. Ct. at 2196. The petitioner, a parolee, was observed by police walking down the street with a woman and a child, and one police officer, who knew that the petitioner was on parole and believed that he faced an outstanding warrant, stopped the petitioner and searched him based on his parole status. *Id.* In the pocket of the petitioner, the officer found a cigarette box containing methamphetamine. *Id.* at 847, 126 S. Ct. at 2196. The *Samson* Court discussed the State of California's interests in reducing recidivism, thereby promoting reintegration and positive citizenship among probationers and parolees, and noted that these interests warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. *Id.* at 853, 126 S. Ct. at 2200. The Court

further noted that "the Fourth Amendment does not render the States powerless to address these concerns *effectively*." *Id*. (citing *Knights*, 534 U.S. at 121, 122 S. Ct. at 587). In balancing the interests presented, the Supreme Court held that the suspicionless search of a California parolee, conducted pursuant to the California law requiring all parolees to agree to be subjected to search or seizure at any time, did not violate the Fourth Amendment. *Id*. at 857, 126 S. Ct. at 2202.

The State relies extensively upon the holding of the United States Supreme Court in *Samson* to advance its current position that the search of the Appellee's home in this case was valid. However, the State's argument ignores an important aspect of the *Samson* holding. The *Samson* majority specifically addressed a primary concern of the dissent, that California's parole search law permitted "a blanket grant of discretion untethered by any procedural safeguards." In response to this concern, the majority reasoned that, although California law authorizes a suspicionless search of a parolee, prevailing California law also requires that a suspicionless search of a parolee be conducted within reasonable constraints:

> The concern that California's suspicionless search system gives officers unbridled discretion to conduct searches, thereby inflicting dignitary harms that arouse strong resentment in parolees and undermine their ability to reintegrate into productive society, is belied by California's prohibition on "arbitrary, capricious or harassing" searches. . . . The dissent's claim that parolees under California law are subject to capricious searches conducted at the unchecked "whim" of law enforcement officers . . . ignores this concern.

*Id*. at 856, 126 S. Ct. at 2202 (citations omitted); *see also People v. Reyes*, 968 P.2d 445, 451 (Cal. 1998). Likewise, it is established precedent in Tennessee that "[t]he essence of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (quoting *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)).

It is settled law that a "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837 (2005) (citing *United States v. Jacobsen*, 46 U.S. 109, 124, 104 S. Ct. 1652, 1663 (1984)). In determining whether a person has been seized, our supreme court has adhered to a totality of the circumstances approach. *Randolph*, 74 S.W.3d at 336. Furthermore, our supreme court has consistently applied the standard set forth by the United States Supreme Court in *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870 (1980), i.e., whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave." *Id*. (citing *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993)).

> A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due

regard for the practical necessities of effective law enforcement requires that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their actions. A founded suspicion is all that is necessary, some basis from which the court can determine that the [seizure] was not arbitrary or harassing.

*State v. Goad*, 549 S.W.2d 377, 379 (Tenn. 1977) (quoting *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966)); *see also State v. McLennan*, 503 S.W.2d 909, 911 (Tenn. 1973), cert. denied, 414 U.S. 1112, 94 S. Ct. 843 (1973).

The Appellee in this case was initially subjected to a police search of her person and her vehicle after a traffic stop for a seatbelt violation, which Officer Palmer admitted was a pretense for investigating an alleged tip from an informant that the Appellee was selling crack cocaine. Despite an absence of contraband on the person of the Appellee or in her vehicle, Officer Palmer then demanded that the Appellee meet the police officers at her home so that they could effectuate a search of her residence. The proof established that the Appellee complied with Officer Palmer's request and met the police at her home approximately twenty minutes later. The total time elapsed from the initial traffic stop to the time of the arrest at the Appellee's home was between one and two hours. The application of the reasonable parole condition by the police officers, in this case, became unreasonable as a result of this lengthy seizure of the Appellee. We conclude that the resulting search and seizure occurring at the home of the Appellee was, accordingly, unreasonable under the state and federal constitutions and that the trial court correctly suppressed the evidence seized as a result of this search.

## CONCLUSION

Based upon the foregoing, the judgment of the Obion County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE