IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-12

 Filed: 15 May 2018

New Hanover County, No. 06 CRS 52283

STATE OF NORTH CAROLINA

 v.

TORREY GRADY

 Appeal by defendant from order entered 26 August 2016 by Judge Phyllis M.

Gorham in New Hanover County Superior Court. Heard in the Court of Appeals 8

August 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph
 Finarelli, for the State.

 Appellate Defender Glenn Gerding, and Everett & Everett, Attorneys at Law, by
 Lewis (“Luke”) Everett, for defendant-appellant.

 CALABRIA, Judge.

 Torrey Grady (“defendant”) appeals from the trial court’s order determining

that satellite-based monitoring (“SBM”) of defendant is a reasonable search under

the Fourth Amendment. After careful review, we conclude that the State failed to

prove the reasonableness of imposing SBM for defendant’s lifetime. Accordingly, we

reverse.

 I. Factual and Procedural Background
 STATE V. GRADY

 Opinion of the Court

 In 1997, defendant pleaded no contest to a second-degree sex offense, and in

2006, he pleaded guilty to taking indecent liberties with a child. The trial court never

made an SBM determination at either of defendant’s sentencing hearings for these

offenses. However, on 14 May 2013, the trial court held an SBM “bring-back” hearing

pursuant to N.C. Gen. Stat. § 14-208.40B (2017). The court found that defendant’s

convictions were both “sexually violent offenses” pursuant to N.C. Gen. Stat. § 14-

208.6(5), and therefore, defendant met the criteria of a “recidivist” under N.C. Gen.

Stat. § 14-208.6(2b). Accordingly, the trial court ordered defendant to enroll in SBM

for the remainder of his natural life, as required by N.C. Gen. Stat. § 14-208.40B(c).

 Defendant appealed that order to this Court, arguing that SBM violated his

right to freedom from unreasonable searches and seizures, as provided by the Fourth

Amendment to the United States Constitution. In an unpublished decision filed 6

May 2014, we affirmed the trial court’s order, concluding that we were bound by our

Court’s rejection of a nearly identical argument in State v. Jones, 231 N.C. App. 123,

750 S.E.2d 883 (2013). State v. Grady, 233 N.C. App. 788, 759 S.E.2d 712 (2014)

(unpublished). After our Supreme Court dismissed defendant’s appeal and denied

discretionary review, State v. Grady, 367 N.C. 523, 762 S.E.2d 460 (2014), the United

States Supreme Court granted defendant’s petition for writ of certiorari.

 The United States Supreme Court held that despite its civil nature, North

Carolina’s SBM program “effects a Fourth Amendment search.” Grady v. North

 -2-
 STATE V. GRADY

 Opinion of the Court

Carolina, 575 U.S. __, __, 191 L. Ed. 2d 459, 462 (2015) (per curiam). However, since

“[t]he Fourth Amendment prohibits only unreasonable searches[,]” the Supreme

Court remanded the case for North Carolina courts to “examine whether the State’s

monitoring program is reasonable—when properly viewed as a search . . . .” Id. at __,

191 L. Ed. 2d at 463.

 On 16 June 2016, the trial court held a remand hearing on the reasonableness

of defendant’s lifetime enrollment in SBM. Officer Scott Pace, a probation supervisor

for the Department of Public Safety, Division of Adult Correction, testified as the

State’s sole witness at the hearing. In addition to Officer Pace’s testimony, the State

presented photographs of the SBM equipment currently used to monitor offenders;

certified copies of the two sex offense judgments; and defendant’s criminal record. At

the close of the State’s evidence, defendant moved for a directed verdict and dismissal,

arguing that the State had failed to prove that SBM is a reasonable search under the

Fourth Amendment. See State v. Blue, __ N.C. App. __, __, 783 S.E.2d 524, 527 (2016)

(concluding that “the State shall bear the burden of proving that the SBM program

is reasonable”). In response, the State offered arguments about the dangers of

recidivism and the State’s interest in protecting the public from sex offenders. After

considering both parties’ arguments, the trial court denied defendant’s motion for a

directed verdict. Defendant then presented evidence, but did not testify, and

subsequently renewed his motion for judgment as a matter of law. The trial court

 -3-
 STATE V. GRADY

 Opinion of the Court

determined that it would rule on defendant’s motion out of term, subject to the

parties’ submission of briefs.

 On 26 August 2016, the trial court entered an order concluding that (1) based

on the totality of the circumstances, SBM of defendant is a reasonable search; and (2)

the SBM statute is facially constitutional. Defendant appeals.

 II. Standard of Review

 “An appellate court reviews conclusions of law pertaining to a constitutional

matter de novo.” State v. Bowditch, 364 N.C. 335, 340, 700 S.E.2d 1, 5 (2010) (citation

omitted). “The trial court’s findings of fact are binding on appeal if they are supported

by competent evidence, and they must ultimately support the trial court’s conclusions

of law.” Id. (citation and quotation marks omitted).

 III. Constitutionality

 The Fourth Amendment, applied to the States through the Fourteenth

Amendment, protects “[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures” by the government.

U.S. Const. amend. IV. It is clear that SBM “effects a Fourth Amendment search.”

Grady, 575 U.S. at __, 191 L. Ed. 2d at 462. Accordingly, the only remaining issue

for the trial court to determine was whether SBM is reasonable under the Fourth

Amendment.

 -4-
 STATE V. GRADY

 Opinion of the Court

 On appeal, defendant first contends that the State failed to prove that lifetime

SBM is a reasonable search of defendant. We agree.

 “The reasonableness of a search depends on the totality of the circumstances,

including the nature and purpose of the search and the extent to which the search

intrudes upon reasonable privacy expectations.” Id. (citations omitted). “Where a

search is undertaken by law enforcement officials to discover evidence of criminal

wrongdoing, . . . reasonableness generally requires the obtaining of a judicial

warrant” issued upon a showing of probable cause. Vernonia Sch. Dist. 47J v. Acton,

515 U.S. 646, 653, 132 L. Ed. 2d 564, 574 (1995). “But a warrant is not required to

establish the reasonableness of all government searches; and when a warrant is not

required (and the Warrant Clause therefore not applicable), probable cause is not

invariably required either.” Id. “In the absence of a warrant, a search is reasonable

only if it falls within a specific exception to the warrant requirement.” Riley v.

California, 573 U.S. __, __, 189 L. Ed. 2d 430, 439 (2014).

 Grady directs us to consider two approaches for our analysis of the warrantless

search in this case: (1) a “general Fourth Amendment approach” based on diminished

expectations of privacy, and (2) “special needs” searches. See 575 U.S. at __, 191 L.

Ed. 2d at 462-63 (citing Samson v. California, 547 U.S. 843, 165 L. Ed. 2d 250 (2006)

(suspicionless search of parolee was reasonable); Vernonia Sch. Dist. 47J v. Acton,

515 U.S. 646, 132 L. Ed. 2d 564 (1995) (random drug testing of student athletes was

 -5-
 STATE V. GRADY

 Opinion of the Court

reasonable)). Under either approach, we use the same context-specific balancing test

to determine the reasonableness of the search. Compare Samson, 547 U.S. at 848,

165 L. Ed. 2d at 256 (“Whether a search is reasonable is determined by assessing on

the one hand, the degree to which it intrudes upon an individual’s privacy and, on the

other, the degree to which it is needed for the promotion of legitimate governmental

interests.” (citation and quotation marks omitted)), with Vernonia Sch. Dist., 515 U.S.

at 652-53, 132 L. Ed. 2d at 574 (“[W]hether a particular search meets the

reasonableness standard is judged by balancing its intrusion on the individual’s

Fourth Amendment interests against its promotion of legitimate governmental

interests.” (citation and quotation marks omitted)).

 However, because the special needs doctrine is typically used to uphold

sweeping programmatic searches, it is a “closely guarded” exception to the warrant

requirement, which only applies to a limited “class of permissible suspicionless

searches.” Ferguson v. City of Charleston, 532 U.S. 67, 80 n.17, 149 L. Ed. 2d 205,

218 n.17 (2001). In order for the exception to apply, the “special need” advanced to

justify dispensing with a warrant or individualized suspicion must be “divorced from

the State’s general interest in law enforcement.” Id. at 79, 149 L. Ed. 2d at 217.1

 1 The Supreme Court has upheld warrantless searches based on a variety of “special needs.”
See, e.g., United States v. Flores-Montano, 541 U.S. 149, 158 L. Ed. 2d 311 (2004) (suspicionless
searches of vehicles at the international border); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 132
L. Ed. 2d 564 (1995) (suspicionless drug testing of public high school athletes); Griffin v. Wisconsin,
483 U.S. 868, 97 L. Ed. 2d 709 (1987) (search of a probationer’s home).

 -6-
 STATE V. GRADY

 Opinion of the Court

 A. Special Needs

 On appeal, the State contends that SBM is a reasonable special needs search.

However, according to the record, it does not appear that the trial court considered

this argument, as neither the hearing transcript nor the State’s Memorandum In

Support of the Reasonableness of Satellite Based Monitoring mentions the special

needs doctrine. The State was aware that defendant challenged the constitutionality

of the SBM program; indeed, that was the entire purpose of the hearing. See Grady,

575 U.S. at __, 191 L. Ed. 2d at 463 (remanding for North Carolina courts to “examine

whether the State’s monitoring program is reasonable—when properly viewed as a

search”). The State had ample opportunity to argue the special needs doctrine—both

at the hearing and in its subsequent brief to the trial court—but nevertheless failed

to do so. Cf. State v. Romano, 369 N.C. 678, 693-94, 800 S.E.2d 644, 654 (2017) (“[T]he

trial court specifically asked the parties for additional research regarding the

constitutionality of the statute in regard to the unconscious defendant. . . . The State

had the opportunity at the suppression hearing to argue that the good faith exception

to the exclusionary rule should apply if the court determined that the officer’s actions

were unconstitutional, but the State failed to raise the argument.” (internal quotation

marks omitted)). Since the State failed to advance this constitutional argument

below, it is waived. Id. at 693, 800 S.E.2d at 654; N.C.R. App. P. 10.

 -7-
 STATE V. GRADY

 Opinion of the Court

 Furthermore, our Court has interpreted the Supreme Court’s mandate in

Grady to require case-by-case determinations of reasonableness, now commonly

referred to as “Grady hearings.” See, e.g., State v. Spinks, __ N.C. App. __, __, 808

S.E.2d 350, 361 (2017) (Stroud, J., concurring) (“The reasonableness of the search and

the totality of the circumstances under which the SBM will operate will depend

necessarily upon the defendant’s circumstances and the operation of SBM at the time

the monitoring will be done of the defendant.” (emphasis added)), disc. review denied,

No. 432P17, __ N.C. __, __ S.E.2d __ (filed Apr. 5, 2018). Following some initial

uncertainty in our trial courts, the parties’ burdens at Grady hearings are now well

established. It is “clear that a case for satellite-based monitoring is the State’s to

make.” State v. Greene, __ N.C. App. __, __, 806 S.E.2d 343, 345 (2017). And, as with

other constitutional arguments, a defendant’s Fourth Amendment SBM challenge

must be properly asserted at the hearing in order to preserve the issue for appeal.

See State v. Bishop, __ N.C. App. __, __, 805 S.E.2d 367, 370 (2017) (declining to issue

a writ of certiorari or invoke Rule 2 to review the defendant’s unpreserved Grady

argument and dismissing his untimely appeal for lack of jurisdiction), disc. review

denied, No. 369P17, __ N.C. __, __ S.E.2d __ (filed Apr. 5, 2018).2

 2 But see State v. Bursell, No. COA16-1253, __ N.C. App. __, __, __ S.E.2d __, __, 2018 WL
1953403, at *4 (filed March 20, 2018) (“In view of the gravity of subjecting someone for life to a
potentially unreasonable search of his person in violation of his Fourth Amendment rights, especially
when considering defendant’s young age, the particular factual bases underlying his pleas, and the
nature of those offenses, combined with the State’s and the trial court’s failures to follow well-

 -8-
 STATE V. GRADY

 Opinion of the Court

 Accordingly, a “general Fourth Amendment approach” based on diminished

expectations of privacy is consistent with our Court’s prior decisions, as well as the

State’s arguments below. See United States v. Knights, 534 U.S. 112, 121-22, 151 L.

Ed. 2d 497, 507 (2001) (explaining that “general or individual circumstances,

including ‘diminished expectations of privacy,’ may justify an exception to the

warrant requirement” (quoting Illinois v. McArthur, 531 U.S. 326, 330, 148 L. Ed. 2d

838, 847 (2001))).

 B. Diminished Expectations of Privacy

 “The Fourth Amendment does not protect all subjective expectations of

privacy, but only those that society recognizes as ‘legitimate.’ ” Vernonia Sch. Dist.,

515 U.S. at 654, 132 L. Ed. 2d at 575. “What expectations are legitimate varies . . .

with context, depending, for example, upon whether the individual asserting the

privacy interest is at home, at work, in a car, or in a public park.” Id. (citation

omitted). “In addition, the legitimacy of certain privacy expectations vis-à-vis the

State may depend upon the individual’s legal relationship with the State.” Id.

 The Supreme Court has held that parolees and probationers have significantly

diminished expectations of privacy as a result of their legal status. Samson, 547 U.S.

at 852, 165 L. Ed. 2d at 259; Knights, 534 U.S. at 119, 151 L. Ed. 2d at 505. These

established precedent in applying for and imposing SBM, and the State’s concession of reversible
Grady error, even if this argument was unpreserved, in our discretion we would invoke Rule 2 to relax
Rule 10(a)(1)’s issue-preservation requirement in order to prevent manifest injustice to defendant.”).

 -9-
 STATE V. GRADY

 Opinion of the Court

individuals “are on the ‘continuum’ of state-imposed punishments[,]” Samson, 547

U.S. at 850, 165 L. Ed. 2d at 258 (citation omitted), and may be required, as

reasonable conditions of parole or probation, to submit to warrantless searches at any

time. Id. at 852, 165 L. Ed. 2d at 259; Knights, 534 U.S. at 119, 151 L. Ed. 2d at 505.

Moreover, “a State’s interests in reducing recidivism and thereby promoting

reintegration and positive citizenship among probationers and parolees warrant

privacy intrusions that would not otherwise be tolerated under the Fourth

Amendment.” Samson, 547 U.S. at 853, 165 L. Ed. 2d at 260.

 The Supreme Court has never addressed whether a convicted sex offender has

a diminished expectation of privacy solely due to the individual’s prior conviction.

However, the Court has recognized a state’s strong interest in protecting its citizens,

particularly minors, from sex offenders. E.g., Smith v. Doe, 538 U.S. 84, 103, 155 L.

Ed. 2d 164, 183-84 (2003). The North Carolina General Assembly also recognizes

“that protection of the public from sex offenders is of paramount governmental

interest” and accordingly enacted mandatory “Sex Offender and Public Protection

Registration Programs,” including SBM. N.C. Gen. Stat. § 14-208.5.

 At the hearing, Officer Pace testified that North Carolina’s SBM program

includes supervised and unsupervised offenders. Supervised offenders include

probationers and individuals under post-release supervision following active

sentences in the custody of the Division of Adult Correction. These individuals “are

 - 10 -
 STATE V. GRADY

 Opinion of the Court

on the ‘continuum’ of state-imposed punishments[,]” Samson, 547 U.S. at 850, 165 L.

Ed. 2d at 258, and their expectations of privacy are accordingly diminished.

Unsupervised offenders, however, are statutorily required to submit to SBM, but are

not otherwise subject to any direct supervision by State officers.

 Defendant is an unsupervised offender. He is not on probation or supervised

release, but rather was enrolled in lifetime SBM more than three years after “all

rights of citizenship which were forfeited on conviction including the right to vote,

[we]re by law automatically restored” to him.3 Solely by virtue of his legal status,

then, it would seem that defendant has a greater expectation of privacy than a

supervised offender. Yet, as a recidivist sex offender, defendant must maintain

lifetime registration on DPS’s statewide sex offender registry. N.C. Gen. Stat. § 14-

208.23. The sex offender registry provides public access to “necessary and relevant

information” about defendant, including his name, home address, offense history,

driver’s license number, fingerprints, and current photograph. Id. at §§ 14-208.5, -

208.7, -208.22. Defendant’s expectation of privacy is therefore appreciably

diminished as compared to law-abiding citizens.

 However, it is unclear whether the trial court considered the legitimacy of

defendant’s privacy expectation. The trial court found, from the evidence presented

 3 But see N.C. Gen. Stat. § 14-415.1 (making it “unlawful for any person who has been convicted
of a felony to purchase, own, possess, or have in his custody, care, or control any firearm or any weapon
of mass death and destruction”).

 - 11 -
 STATE V. GRADY

 Opinion of the Court

at the hearing, that SBM affects defendant’s Fourth Amendment interests in the

following ways:

 Officer Pace testified about how the ankle monitor
 operates and how it affects the person wearing it. Included
 in his testimony, Officer Pace testified that the device
 weighs 8.7 oz., it can be worn underneath socks and/or long
 pants, it can be worn while bathing, showering, and
 swimming in pools and the ocean. The ankle monitor does
 not prohibit any defendant from traveling, working, or
 otherwise enjoying the ability to legally move about as he
 wishes. It does not prohibit or restrict air travel. Officer
 Pace has monitored defendants wearing the ankle monitor
 who have worked both physical labor jobs and office jobs,
 travelled by airplane and engaged in sporting activities
 including surfing. The ankle monitor does not monitor or
 reveal the activities of the offender—it merely monitors his
 location. The device does not confine the person to their
 residence or any other specific location. The ankle monitor
 and related equipment requires a quarterly (three months)
 review/inspection by the State to ensure that the device is
 in proper working order.

 These findings address “the nature and purpose” of SBM, but not “the extent

to which the search intrudes upon reasonable privacy expectations.” Grady, 575 U.S.

at __, 191 L. Ed. 2d at 462. This is a significant omission, because the Supreme Court

has consistently emphasized the importance of viewing the “character of the

intrusion” in context. See, e.g., Knights, 534 U.S. at 119, 151 L. Ed. 2d at 505

(“Knights’ status as a probationer subject to a search condition informs both sides of

th[e reasonableness] balance.”); Vernonia Sch. Dist., 515 U.S. at 665, 132 L. Ed. 2d at

582 (“We caution against the assumption that suspicionless drug testing will readily

 - 12 -
 STATE V. GRADY

 Opinion of the Court

pass constitutional muster in other contexts. The most significant element in this

case is the first we discussed: that the Policy was undertaken in furtherance of the

government’s responsibilities, under a public school system, as guardian and tutor of

children entrusted to its care.” (emphasis added)).

 Viewed in context, SBM intrudes to varying degrees upon defendant’s privacy

through (1) the compelled attachment of the ankle monitor, and (2) the continuous

GPS tracking it effects. We consider each in turn.

 1. Ankle Monitor

 Officer Pace testified that the SBM program currently uses an electronic

monitoring device called the ExacuTrack One (“ET-1”), which is “installed” on an

offender’s ankle with tamper-proof fiber-optic straps. The ET-1 is physically

unobtrusive: it weighs a mere 8.7 ounces and is small enough to be covered by a pant

leg or sock. Unlike prior SBM devices, the ET-1 is waterproof up to 15 feet and may

be worn in the ocean. The ET-1 does not physically limit an offender’s movements;

employment opportunities; or ability to travel, even on airplanes.4

 On appeal, defendant complains about the audible voice warning messages

that the ET-1 occasionally utters, and the need to remain near an electrical outlet for

two hours each day while its lithium battery charges. However, we consider those

 4 Compare the water resistance and travel flexibility afforded by the current SBM device with
the one used in 2010. See Bowditch, 364 N.C. at 339-40, 700 S.E.2d at 4-5 (“Submerging the ankle
bracelet in three feet or more of water generates a ‘bracelet gone’ alert[,] . . . and commercial airplane
flight is likely limited due to security regulations.”).

 - 13 -
 STATE V. GRADY

 Opinion of the Court

aspects of SBM to be more inconvenient than intrusive, in light of defendant’s

diminished expectation of privacy as a convicted sex offender. Cf. Belleau v. Wall,

811 F.3d 929, 935 (7th Cir. 2016) (observing that “the plaintiff’s privacy has already

been severely curtailed” due to Wisconsin’s mandatory sex offender registration law,

and reasoning that any additional privacy loss he experiences when “his trouser leg

hitches up and reveals an anklet monitor that may cause someone who spots it to

guess that this is a person who has committed a sex crime must be slight”); see also

Bowditch, 364 N.C. at 347, 700 S.E.2d at 9 (rejecting that SBM enrollment is akin to

house arrest, because “[i]n this day and age, finding a source of available electricity,

whether at a home, hotel, place of employment, or even in a moving vehicle, should

be little or no challenge”).

 2. Continuous GPS Monitoring

 In addition to physically intruding on defendant’s body, “a constitutionally

protected area,” United States v. Jones, 565 U.S. 400, 406 n.3, 181 L. Ed. 2d 911, 919

n.3 (2012), the ET-1 also effects a continuous, warrantless search of defendant’s

location through the use of GPS technology. Notwithstanding defendant’s diminished

expectation of privacy, this aspect of SBM is “uniquely intrusive” as compared to

other searches upheld by the United States Supreme Court. Belleau, 811 F.3d at 940

(Flaum, J., concurring).

 - 14 -
 STATE V. GRADY

 Opinion of the Court

 As a recidivist sex offender, defendant is required by law to notify the State—

and by extension, the public—whenever he moves to a new address, enrolls as a

student, or obtains employment at an institution of higher education. N.C. Gen. Stat.

§ 14-208.9(a),(c),(d). Nevertheless, this type of static information is materially

different from the continuous, dynamic location data SBM yields. “GPS monitoring

generates a precise, comprehensive record of a person’s public movements that

reflects a wealth of detail about her familial, political, professional, religious, and

sexual associations.” Jones, 565 U.S. at 415, 181 L. Ed. 2d at 924 (Sotomayor, J.,

concurring). At the hearing, Officer Pace acknowledged that through analysis of SBM

location data, the State could ascertain whether an offender was regularly visiting a

doctor’s office, an ABC store, or a place of worship.

 However, the only portion of the trial court’s order which addresses GPS

monitoring is the finding that the “ankle monitor does not monitor or reveal the

activities of the offender—it merely monitors his location.” On appeal, the State

contends that this aspect of SBM is similar to the compulsory drug testing of Oregon

public high school student-athletes upheld in Vernonia Sch. Dist. 47J v. Acton, 515

U.S. 646, 132 L. Ed. 2d 564 (1995). See id. at 658, 132 L. Ed. 2d at 578 (observing

that one “privacy-invasive aspect of urinalysis is . . . the information it discloses

concerning the state of the subject’s body, and the materials he has ingested”). We

agree that the type of information disclosed through the search is certainly an

 - 15 -
 STATE V. GRADY

 Opinion of the Court

important consideration. However, the State’s use of the information is also relevant.

See id. (deeming it “significant” that, inter alia, the tests “look only for drugs, and not

for whether the student is, for example, epileptic, pregnant, or diabetic[,]” and that

the results were “not turned over to law enforcement authorities or used for any

internal disciplinary function”).

 Here, it is significant that law enforcement is not required to obtain a warrant

in order to access defendant’s SBM location data. The ability to track a suspect’s

whereabouts is an undeniably powerful tool in a criminal investigation. However,

the State presented no evidence of defendant’s current threat of reoffending, and the

record evidence regarding the circumstances of his convictions does not support the

conclusion that lifetime SBM is objectively reasonable.5 Although the State has no

guidelines for presentation of evidence at Grady hearings, nevertheless, there must

be sufficient record evidence to support the trial court’s conclusion that SBM is

reasonable as applied to this particular defendant.

 5 The only evidence within the appellate record of the circumstances underlying defendant’s
sex offense convictions is in the Memorandum In Support of Defendant’s Motion for Judgment As a
Matter of Law, which states:
 “[T]he evidence that the State did present shows that although [defendant] was convicted of
second degree sexual offense in 1996 when he was 17 years old, and that he pled ‘no contest’ to that
charge. See State’s Exhibit 5. The State also relied on the prior court record in this case to show that
[defendant] was convicted in 2006 of indecent liberties. The indictment, also a part of that court record,
indicates that this conviction was based on [defendant]’s having had [a] non-forcible sexual
relationship with a fifteen-year-old female, when he was 26 years old.”
 State’s Exhibit 5 was not provided to this Court.

 - 16 -
 STATE V. GRADY

 Opinion of the Court

 In concluding that SBM is reasonable, the trial court heavily relied on Belleau

v. Wall, 811 F.3d 929 (7th Cir. 2016).6 However, the circumstances in Belleau are

starkly different from those in the instant case. In Belleau, the 7th Circuit upheld

lifetime GPS monitoring of a 73-year-old man who, from 2004-2010, had been civilly

committed as a “sexually violent person” by the state of Wisconsin. Id. at 931 (citing

Wis. Stat. §§ 980.01(7), 980.06); see also id. at 935 (“[P]ersons who have demonstrated

a compulsion to commit very serious crimes and have been civilly determined to have

a more likely than not chance of reoffending must expect to have a diminished right

of privacy as a result of the risk of their recidivating[.]”). In holding that “Wisconsin’s

ankle monitoring of Belleau is reasonable[,]” id. at 937, the Court considered a

plethora of record evidence regarding the plaintiff’s long history of molesting

prepubescent children, id. at 931; his medical diagnosis as a pedophile and

documented inability to “reduce[] his sexual deviance . . . [and] suppress or manage

his deviant arousal,” id. at 934; the plaintiff’s statistical likelihood of reoffending, as

 6 The trial court also relied on People v. Hallak, 873 N.W.2d 811 (Mich. Ct. App. 2015), rev’d
on other grounds, 876 N.W.2d 523 (Mich. 2016) (mem.). However, that case is readily distinguishable.
The Hallak defendant, a medical doctor, was sentenced to lifetime electronic monitoring due to his
conviction for second-degree criminal sexual conduct for improperly touching a 12-year-old patient.
See 873 N.W.2d at 826 (“[A]lthough this monitoring lasts a lifetime, the Legislature presumably
provided shorter prison sentences for these . . . convictions because of the availability of lifetime
monitoring.”). Unlike Michigan’s electronic monitoring program, North Carolina’s SBM program is
civil and nonpunitive in nature. Compare id. at 825 (“[I]t is evident that in enacting this monitoring
provision, the Legislature was seeking to provide a way in which to both punish and deter convicted
child sex offenders and to protect society from a group known well for a high recidivism rate.”), with
Bowditch, 364 N.C. at 342, 700 S.E.2d at 6 (“[T]he legislative objective in enacting SBM was to
establish a nonpunitive, regulatory program.”).

 - 17 -
 STATE V. GRADY

 Opinion of the Court

determined by his evaluating psychologist, id.; and studies regarding the general

recidivism rates of sex offenders and serious underreporting of sex crimes against

children, id. at 933-34.7

 By contrast, here, the State failed to present any evidence concerning its

specific interest in monitoring defendant, or of the general procedures used to monitor

unsupervised offenders. Instead, the State submitted copies of the two sex offense

judgments and defendant’s criminal record, arguing that defendant himself was

“Exhibit Number 1” of SBM’s success in deterring recidivists, because “[s]ince he’s

been monitored, guess what: He hasn’t recommitted, he hasn’t been charged with

another sex offense.” However, Officer Pace, the State’s sole witness, testified that

the ET-1 cannot actually prevent an offense from occurring. And although

knowledgeable about the ET-1 and monitoring supervised offenders, Officer Pace was

unaware of the procedures used to monitor unsupervised offenders such as defendant,

“because [he] do[es]n’t deal with those” cases. “[P]eople out of Raleigh” monitor

unsupervised offenders, and Officer Pace did not know “their requirements [for]

checking their system.”

 7 The concurring judge would have upheld Wisconsin’s monitoring program as a reasonable
special needs search. See Belleau, 811 F.3d at 940 (Flaum, J., concurring) (“[T]he GPS monitoring
provided under the Wisconsin law occurs constantly, lasts indefinitely, and is the subject of periodic
government scrutiny. Accordingly, this monitoring program is uniquely intrusive, likely more
intrusive than any special needs program upheld to date by the Supreme Court.” (citations omitted)).

 - 18 -
 STATE V. GRADY

 Opinion of the Court

 We acknowledge the State’s compelling interest in protecting the public,

particularly minors, from dangerous sex offenders. Of course, it is axiomatic that

“the sexual abuse of a child is a most serious crime and an act repugnant to the moral

instincts of a decent people. And it is clear that a legislature may pass valid laws to

protect children and other victims of sexual assault from abuse.” Packingham v.

North Carolina, 582 U.S. __, __, 198 L. Ed. 2d 273, 281 (2017) (citations and quotation

marks omitted). “The government, of course, need not simply stand by and allow

these evils to occur. But the assertion of a valid governmental interest cannot, in

every context, be insulated from all constitutional protections.” Id. (citations and

quotation marks omitted); see also id. at __, 198 L. Ed. 2d at 283 (holding that N.C.

Gen. Stat. § 14-202.5—banning registered sex offenders from accessing “a commercial

social networking Web site” known to permit minors “to become members or to create

or maintain personal Web pages”—violates the First Amendment).

 At the time of defendant’s remand hearing, the SBM program had been in

effect for approximately ten years. However, the State failed to present any evidence

of its efficacy in furtherance of the State’s undeniably legitimate interests. The State

conceded this point on 8 August 2017 during oral arguments before this Court.

Defendant, however, presented multiple reports authored by the State and federal

governments rebutting the widely held assumption that sex offenders recidivate at

higher rates than other groups. Although the State faulted defendant for presenting

 - 19 -
 STATE V. GRADY

 Opinion of the Court

statistics about supervised offenders, the State bears the burden of proving

reasonableness at Grady hearings. Blue, __ N.C. App. at __, 783 S.E.2d at 527. Here,

we are compelled to conclude that the State failed to carry its burden.

 We emphasize, however, that our holding is limited to the facts of this case.

We reiterate the continued need for individualized determinations of reasonableness

at Grady hearings. As we held in Greene, the State will have only one opportunity to

prove that SBM is a reasonable search of the defendant. __ N.C. App. at __, 806

S.E.2d at 344-45 (reversing without remanding the lifetime SBM order where “[t]he

State offered no further evidence beyond defendant’s criminal record”). And the

defendant will have one opportunity to assert a Fourth Amendment challenge or risk

appellate waiver of the issue. See Bishop, __ N.C. App. at __, 805 S.E.2d at 370

(“Bishop is no different from other defendants who failed to preserve their

constitutional arguments in the trial court, and because he has not argued any

specific facts that demonstrate manifest injustice if we decline to invoke Rule 2, we

do not believe this case is an appropriate use of that extraordinary step.”).

 IV. Conclusion

 As a recidivist sex offender, defendant’s expectation of privacy is appreciably

diminished as compared to law-abiding citizens. However, the State failed to present

any evidence of its need to monitor defendant, or the procedures actually used to

conduct such monitoring in unsupervised cases. Therefore, the State failed to prove,

 - 20 -
 STATE V. GRADY

 Opinion of the Court

by a preponderance of the evidence, that lifetime SBM of defendant is a reasonable

search under the Fourth Amendment. Because we have determined that the trial

court erred by concluding that SBM is a reasonable search of defendant, we need not

address the parties’ remaining arguments. We reverse the trial court’s order.

 REVERSED.

 Judge STROUD concurs.

 Judge BRYANT dissents in a separate opinion.

 - 21 -
 No. COA17-12 – State v. Grady

 BRYANT, Judge, dissenting.

 I firmly believe that unless the statutes enacting North Carolina’s satellite-

based monitoring (SBM) program are deemed to be unconstitutional on their face, the

State’s burden of proof to show that SBM is a reasonable search in accordance with

the Fourth Amendment is not so high as the majority has set forth. By requiring the

State to establish an interest in monitoring defendant and the efficacy of the SBM

program beyond that which has been defined and codified by our General Assembly,

the majority asks the State to meet a burden of proof greater than our General

Assembly envisioned as necessary and greater than Fourth Amendment

jurisprudence requires. For these reasons, I respectfully dissent.

 The Fourth Amendment sets forth “[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and

seizures.” U.S. Const. amend. IV. “The reasonableness of a search depends on the

totality of the circumstances, including the nature and purpose of the search and the

extent to which the search intrudes upon reasonable privacy expectations.” Grady v.

North Carolina, 575 U.S. ___, ___, 191 L. Ed. 2d 459, 462 (2015) (citing Samson v.

California, 547 U.S. 843, 165 L. Ed. 2d 250 (2006); Vernonia School Dist. 47J v. Acton,

515 U.S. 646, 132 L. Ed. 2d 564 (1995)). “Whether a search is reasonable ‘is

determined by assessing, on the one hand, the degree to which it intrudes upon an

individual’s privacy and, on the other, the degree to which it is needed for the

promotion of legitimate governmental interests.’ ” Samson, 547 U.S. at 848, 165 L.
 STATE V. GRADY

 BRYANT, J., dissenting

Ed. 2d at ___ (citing United States v. Knights, 534 U.S. 112, 118–19, 151 L. Ed. 2d

497 (2001)).

 Defendant’s Privacy

 “The Fourth Amendment does not protect all subjective expectations of

privacy, but only those that society recognizes as ‘legitimate.’ ” Vernonia Sch. Dist.

47J, 515 U.S. at 654, 132 L. Ed. 2d at 575; see, e.g., Samson, 547 U.S. 843, 165 L. Ed.

2d 250 (upholding warrantless search of parolee); Knights, 534 U.S. 112, 151 L.Ed.2d

497 (upholding warrantless search of probationer’s home based on reasonable

suspicion and condition of probation); Griffin v. Wisconsin, 483 U.S. 868, 875–80, 97

L.Ed.2d 709, 718–22 (1987) (upholding warrantless search of probationer’s home

based on special needs).

 The physical limitations imposed by the SBM system’s ET-1 monitoring device

are minimal: it weighs 8.7 oz., can be worn under socks, can be worn in the water,

does not prohibit physical activity or travel, but must be charged daily. The majority

deems these limitations “more inconvenient than intrusive,” and I agree. The issue

is to what degree continuous monitoring—which generates a history of the wearer’s

movements—intrudes upon a legitimate expectation of privacy.

 As to this defendant, the majority concludes that his expectation of privacy is

diminished as compared to that of a law-abiding citizen. I agree. Due to defendant’s

 2
 STATE V. GRADY

 BRYANT, J., dissenting

enrollment in North Carolina’s sex offender registry,8 defendant’s name, sex, address,

physical description, picture, conviction date, offense for which registration was

required, sentence imposed as a result of conviction, and registration status are made

available to the public. N.C. Gen. Stat. § 14-208.10(a).

 Next, I consider the State’s interests.

 Legitimate Governmental Interest

 “Sex offenders are a serious threat in this Nation.” McKune
 v. Lile, 536 U.S. 24, 32, 153 L.Ed.2d 47 (2002) (plurality
 opinion). “[T]he victims of sex assault are most often
 juveniles,” and “[w]hen convicted sex offenders reenter
 society, they are much more likely than any other type of
 offender to be re-arrested for a new rape or sexual assault.”
 Id., at 32–33 . . . . [E]very . . . State, has responded to
 these facts by enacting a statute designed to protect
 its communities from sex offenders and to help
 apprehend repeat sex offenders.

Connecticut Dep’t of Pub. Safety v. Doe, 538 U.S. 1, 4, 155 L. Ed. 2d 98, 103 (2003).

 The U.S. Supreme Court has noted “[t]here is evidence that recidivism rates

among sex offenders are higher than the average for other types of criminals” and

that “[t]here is also conflicting evidence on the point.” United States v. Kebodeaux,

570 U.S. ___, ___, 186 L. Ed. 2d 540, 549 (2013) (citations omitted). Our General

Assembly has determined that those convicted of specific sex offenses or those who

 8 Defendant’s prior record reflects a 2004 conviction for failure to register as a sex offender.
Also, defendant’s 1996 and 2006 convictions, both determined to be sexually violent offenses qualify
him for enrollment in the Sex Offender and Public Protection Registration Program. See N.C. Gen.
Stat. § 14-208.6A.

 3
 STATE V. GRADY

 BRYANT, J., dissenting

have multiple convictions for specific sex offenses pose a danger to the public safety

and welfare that is to be guarded against in the form of public registries for sex

offenders and in some categorical cases, SBM programs available to law enforcement

agencies.

 In the enabling language of our Sex Offender and Public Protection

Registration Programs, our General Assembly stated the purpose of these programs.

 The General Assembly recognizes that sex offenders often
 pose a high risk of engaging in sex offenses even after being
 released from incarceration or commitment and that
 protection of the public from sex offenders is of paramount
 governmental interest.

 The General Assembly also recognizes that persons who
 commit certain other types of offenses against minors . . .
 pose significant and unacceptable threats to the public
 safety and welfare of the children in this State and that the
 protection of those children is of great governmental
 interest. Further, the General Assembly recognizes that
 law enforcement officers’ efforts to protect communities,
 conduct investigations, and quickly apprehend offenders
 who commit sex offenses or certain offenses against minors
 are impaired by the lack of information available to law
 enforcement agencies about convicted offenders who live
 within the agency’s jurisdiction. Release of information
 about these offenders will further the governmental
 interests of public safety so long as the information
 released is rationally related to the furtherance of those
 goals.

 Therefore, it is the purpose of this Article to assist law
 enforcement agencies’ efforts to protect communities by
 requiring persons who are convicted of sex offenses or of
 certain other offenses committed against minors to register
 with law enforcement agencies, to require the exchange of

 4
 STATE V. GRADY

 BRYANT, J., dissenting

 relevant information about those offenders among law
 enforcement agencies, and to authorize the access to
 necessary and relevant information about those offenders
 to others as provided in this Article.

N.C. Gen. Stat. § 14-208.5 (2017).

 In this effort, the General Assembly directed the Division of Adult Correction

and Juvenile Justice of the Department of Public Safety to establish a SBM program

to monitor three categories of sex offenders.

 Any offender who is convicted of a reportable conviction as
 defined by G.S. 14-208.6(4) [(an offense against a minor or
 a sexually violent offense)] and who is required to register
 under Part 3 [(“Sexually Violent Predator Registration
 Program”)] of Article 27A of Chapter 14 of the General
 Statutes because the defendant is classified as a sexually
 violent predator, is a recidivist, or was convicted of an
 aggravated offense as those terms are defined in G.S. 14-
 208.6.

Id. § 14-208.40(a)(1) (emphasis added). Additionally, “[i]f the court finds that the

offender . . . is a recidivist . . . , the court shall order the offender to enroll in a satellite-

based monitoring program for life.” Id. § 14-208.40A(c) (emphasis added).9

Defendant does not challenge on appeal the legitimacy of these governmental

interests.

 9 “An offender . . . who is required to submit to satellite-based monitoring for the offender’s life
may file a request for termination of monitoring requirement with the Post-Release Supervision and
Parole Commission.” N.C. Gen. Stat. § 14-208.43(a) (2017). Thereafter, while required initially, SBM
for life does not necessarily mean one is monitored for life.

 5
 STATE V. GRADY

 BRYANT, J., dissenting

 The majority concludes that the State failed to put forth any evidence

establishing a specific interest in monitoring defendant and the efficacy of the SBM

program. I submit that our General Assembly has categorically determined and

described those with a threat of reoffending significant enough to warrant SBM. The

SBM statutes specifically describe three categories of sex offenders the program is

designed to monitor. See id. § 14-208.40(a). So long as the State presents sufficient

evidence to establish that a defendant meets the requisite statutory definitions and

criteria for a court to order the defendant be enrolled in our SBM program, the State

has presented sufficient evidence to establish a specific interest in monitoring the

defendant.

 During the bring-back hearing, the State presented evidence that defendant’s

convictions were reportable, sexually violent convictions, and that defendant met the

statutory definition of a recidivist. And it should be noted that upon making these

findings, the trial court was bound by statute to order defendant to enroll in SBM for

life. See id. § 14-208.40A(c) (“If the court finds that the offender . . . is a recidivist, . .

. the court shall order the offender to enroll in a satellite-based monitoring program

for life.”).

 Defendant’s prior record of reportable, sexually violent convictions, as well as

his status as a recidivist in conjunction with our General Assembly’s codified

categorical assessment that offenders who meet those criteria are to be enrolled in

 6
 STATE V. GRADY

 BRYANT, J., dissenting

our SBM program to better assist law enforcement agencies’ efforts to protect

communities, see id. § 14-208.40(a)(1), establishes the State’s interest in monitoring

this particular defendant.

 Weighing Expectation Against Interest

 The question is whether the State’s interest in protecting the public from

defendant, a recidivist sex offender who qualifies for participation in our State’s SBM

program, outweighs defendant’s diminished expectation of privacy. I believe that it

does.

 The evidence before the trial court as to defendant was as follows: In 1996,

defendant pled no contest to second-degree sex offense (a Class C felony); and in 2006,

defendant was indicted on charges of statutory rape and indecent liberties with a

child before he pled guilty to taking indecent liberties with a child (a Class F felony)

and admitted that the victim was impregnated as a result of his actions.10 The trial

court found both offenses to be “sexually violent offenses,” as defined by N.C. Gen.

Stat. § 14-208.6, and further found defendant met the definition of a “recidivist” under

the same statute. See id. § 14-208.6(2b), (5). By statute, the trial court was compelled

to order defendant’s enrollment in our SBM program. See id. § 14-208.40A(c) (“If the

court finds that the offender . . . is a recidivist, . . . the court shall order the offender

to enroll in a satellite-based monitoring program for life.”). Therefore, our General

 10Though not germane to the statutory scheme for SBM enrollment, it should be noted that in
2004, defendant was convicted of failing to register as a sex offender.

 7
 STATE V. GRADY

 BRYANT, J., dissenting

Assembly had determined that the State’s burden of proof is not so high as the

majority would require.11

 Weighing the degree to which participation in the SBM program intrudes upon

defendant’s privacy and, on the other hand, the degree to which SBM participation

promotes legitimate governmental interests—the prevention of criminal conduct or

the apprehension of defendant should he reoffend—the trial court’s determination

that the intrusion upon defendant’s privacy was outweighed by the legitimate

governmental interest was supported by the evidence in this case. Given the totality

of the circumstances—including the nature of the search (the collection of location

data for a recidivist sex offender), the purpose of the search (to protect the public

against sex offenses), and the extent to which the search intrudes upon defendant’s

diminished expectations of privacy (an accumulated history of defendant’s

movements12)—I believe defendant’s participation in the SBM program is reasonable

and in accordance with our statutory scheme. Accordingly, I would affirm the trial

court’s order.

 11 The majority notes that the State “failed to present any evidence of [the] efficacy [of the SBM
program which had been in effect for approximately ten years] in furtherance of its undeniably
legitimate interest,” and that defendant presented evidence rebutting the assumption of the high rate
of recidivism by sex offenders. While this may be a valid legislative argument, I do not believe it to be
a persuasive argument that defendant’s participation in the SBM program, when viewed as a search,
was unreasonable.
 12 While there may be an argument that over a long course of time accumulated location data

of an individual revealing no criminal conduct will become more burdensome than the Fourth
Amendment can tolerate, I do not believe we need to address this argument at this point. Presently,
defendant has been convicted of two sexually violent offenses and designated a recidivist and does not
have a lengthy history devoid of assaults on minors.

 8
 STATE V. GRADY

BRYANT, J., dissenting

 9